King, Administrator, vs. Atkins et al.'

No. 1022.

H. D. KING, ADMINISTRATOR, vs. WM. T. ATKINS ET AL.

ON MOTION TO DISMISS.

When a judgment by Default has been taken against one of two Defendants, the other Defendant having filed an Answer, and, after trial of the case, Plaintiff's demand is rejected and he appeals, the Appellees cannot pretend that there is no judgment as to the Defendant who made no appearance and that, as he is a necessary party, the Appeal should be dismissed.

ON THE MERITS.

The rule of evidence in Louisiana, differently from that established by the Supreme Court of the United States, is that a witness, on the cross-examination, may be interrogated upon matters unconnected with those upon which he was examined in chief. Previous Decisions affirmed.

Simulation, from its nature, can, usually, be proved only by indirect and circumstantial evidence; and when facts are shown, which are sufficient to throw doubt upon the reality of the sale, the burden of proof is shifted to the parties who know the truth and can establish it by their testimony.

When, under such circumstances, they fail to furnish the evidence clearly within their power, all the presumptions of law are against them.

33 1057
51 324

33 1057
52 1723

33 1057
109 157

33 1057
f117 293
117 829

King, Administrator, vs. Atkins et al.

Such *prima facie* case of simulation, if the parties charged with it, do not even attempt to rebut it by their own testimony, will be conlusive and sufficient to set aside the transaction complained of. ·

APPEAL from the Fifth Judicial District Court, parish of Ouachita. *Stubbs*, special judge.

### *Boatner & Liddell* for Plaintiff and Appellant: .

The homologation of a tableau of distribution does not bar a second administration of the succession, where the funds represented by the tableau to be in possession of the administrator have never been distributed, and the second administration is provoked for the purpose of bringing into the succession property held by third persons under simulated titles; and in such proceeding the administrator is the proper party to represent the succession.

The plea of *res judicata* will not avail one not a party to the judgment or proceedings, urged in bar. Nor is the plea available against an action attacking those proceedings as simulated, or null for any other cause.

An administrator cannot be estopped by the action of a creditor of the estate he represents.

The creditors of a succession can only assert its rights against third persons through an administrator. 29 An. 574.

The administrator is primarily the representative of the creditors and has the authority to take all legal measures for the protection of their interests. 2 An. 923 ; 4 An. 169 ; 10 An. 723.

The creditors of a succession would not be heard to deny that the representative of a succession had in hands the funds which he proposed to distribute, or that the sales of property from which those funds purport to have been realized, were simulated. If the administrator accounts for and pays over the funds so claimed to have been realized, the creditor would be without interest to question the sale upon that ground. The right of the creditor to do so arises only on the default of the administrator to distribute the proceeds. 29 An. 574.

When the vendor remains in possession the sale is presumed simulated. C. C.

The presumption "*omnia rite esse acta*" &c., is one of fact, and is weak or strong according to the circumstances of the case in which it is applied. Where the officer whose act is invoked as supporting the presumption is himself a party to the suit in which that act is attacked as fraudulent and collusive, and as inuring to the benefit of that officer, the presumption is entitled to little weight.

The allegations of fraud and collusion need to be supported only by *prima facie* evidence. The onus to disprove them is shifted to the party holding the affirmative of the issue, and the allegations unless disproved, will be taken as true.

Simulation can usually be proved only by indirect and circumstantial evidence, and where a *prima facie* case of simulation has been made out by such evidence the *onus probandi* is shifted to the defence who must establish the reality of the sale.

The right·of cross-examination to all matters is relevant to the issue, and is not limited to matters elicited on the examination in chief.

Where a party, whose title to valuable property has for years been questioned and attacked as being simulated, has opposed by every means in his power the investigation of his title, and when sworn as a witness in his own behalf, avoids giving testimony upon the fact of simulation *vel non* by a technical objection, the presumption of simulation is conclusive.

### MOTION TO DISMISS.

### *Cobb & Gunby* for Defendants and Appellees :·

First—When all the parties of record who have an interest in the final result of the judgment or that it should remain undisturbed are not made parties to the appeal, the same should

be dismissed, if the fault be not attributable to any one else than appellant for failure to cause the appeal to be properly brought before the Court.

Second—When in an action by a subsequent administrator of a succession, the former having been removed, to declare as fraudulent and simulated a probate sale made during the former administration, the vendee and administratrix are made parties defendant and the prayer of the petition is that there be judgment against defendants *in solido* for accrued and accruing rents for several years, amounting to over $3000, the administratrix must be made a party to the appeal.

Third—When judgment by default is taken as to one party and no further steps or proceedings are had as to that party, and no answer filed by that party, the other party in interest having appeared in his own behalf, joined issue with plaintiff and on trial obtained judgment in favor of defendants, plaintiff appealing by motion in open court, notice of judgment by default and citation of appeal must issue to the co-defendant not represented by counsel, and against whom the judgment by default was not proved up and made final, or the appeal should be dismissed. C. P. 575, 898; 3 R. 436; 5 R. 224; 10 R. 399; 12 R. 180; 5 An. 174; 10 An. 650; 12 An. 755, 801; 18 An. 177, 281; 19 An. 136, 141, 296; 21 An. 238, 618; 23 An. 502.

First—After a succession has been administered, all the property sold, final account filed and opposition thereto tried, the rights of all the creditors fixed by final judgment, no new administration of same can be granted. The rights of creditors and others are fixed by the final judgment on the account, and if third parties hold property alleged to belong to the succession, either under simulated or fraudulent title, parties having rights fixed by the final judgment must proceed directly against the party holding such property of the succession.

Second—When by the terms of plaintiff's petition both fraud and simulation are charged against defendants, plaintiff shall be compelled to elect upon which he chooses to proceed.

Third—When an insolvent succession has been opened, the personal property sold at public sale and proceeds distributed among creditors having special privileges, and afterwards, on petition of the creditors, the immovable property, subject to general privileges, is sold by the sheriff, whose *proces verbal* and deed recites that the terms of the bid are complied with by the purchaser, final account embracing the price and amount of the bid of such purchase filed, and proceeds distributed, opposition of creditors to such account being filed, claiming a share in the proceeds of the sale, and not denying that the same was *bona fide*, and after final judgment had fixed the liability of the administratrix and rights of creditors, the creditors after issuing execution on said judgment and failed to realize amount from administratrix, cannot be heard to afterwards set up the simulation and fraud of the sale of which they have claimed the proceeds. They are estopped by their judicial admissions, and claiming the proceeds and the validity of the sale is, as to them and all the world. *res adjudicata*.

Fourth—A judgment whether placed on the tableau of distribution and ranked by the court of last resort or not, becomes null and void, as to all parties, in ten years after its rendition, if not revived as required by law. Sureties paying the judgment and becoming subrogated thereby to the rights of the judgment creditor against co-sureties or the debtor, are in no better condition than the judgment creditor could have been had he continued to own the judgment. Creditors by open account whose claims have been placed on tableau and fixed by judgment, having allowed ten years to run without having their claim reallowed by the administrator and revived, are barred by prescription, though there be subsequent litigation as to their rank, privileges, &c. Simulation or fraud is not presumed against a party in possession with *prima facie* valid title made at public sale. The plaintiff alleging must prove enough to throw the onus on the vendee before he can be compelled to offer any evidence to support his title.

The opinion of the Court was delivered by

FENNER, J.  The motion to dismiss on the grounds that there is no judgment as to Mrs. Gayle, one of the co-defendants and a necessary party, and no appeal as to her, has no merit.

Both the defendants were cited.  The case was put at issue as to both—by default as to Mrs. Gayle, and by answer as to W. T. Atkins. Upon these issues the case was tried.  Had judgment been in favor of plaintiff, the judgment by default against Mrs. Gayle would have been confirmed and judgment would have gone against both defendants.  As the decision rejected plaintiff's demand, of course the default was not confirmed, and judgment was rendered " for defendants."

The appeal was taken, at the same term, by motion in open court, and, therefore, both defendants are properly before us as appellees.

The motion to dismiss is denied.

This suit is brought to annul, as a fraudulent simulation, a sale of a house and lot in Monroe, made by the sheriff under a writ of sale issued in the succession of Wm. H. Gayle, to which succession the property belonged.

The following statement of anterior facts is necessary for the understanding of the case.

W. H. Gayle died in 1867, leaving property and large debts.  His widow, Mrs. Ann L. Gayle, qualified as administratrix of his succession.

The personal property was first sold, and a provisional account filed by her, which, after trial of oppositions thereto and appeal to this Court, was amended and homologated.

Thereafter, at the instance of creditors, an order was issued for the sale of the real estate in the parish of Ouachita, including the property now in controversy.

W. T. Atkins became the adjudicatee of the last-mentioned property for $5000, and received for the same the joint deed of the administratrix and of the sheriff, in which the administratrix, *alone*, acknowledges to have received from him the price of $5000.

The administratrix then filed her final account, in which she charged herself with the above $5000, as well as with proceeds of sale of other property.  After distributing other funds in payment of special and general privileges, there remained $5456 50, being the above $5000, and $456 50 proceeds of other property, which she separately distributed as follows : to the balance of general privileges $3631 13, and the rest ($1834 27) to go to judicial and legal mortgages on the property in favor of herself.  To this account sundry oppositions were filed,. disputing several of the general privileges and the mortgages claimed by the administratrix, and also demanding that she should be charged with

rents of the property here involved during the time of her administra-
tion while she had occupied it as her residence.

Upon appeal to this Court, the account was amended, by rejecting
sundry privileges allowed on the account, rejecting the administratrix's
claim to a legal mortgage, charging her with $3000, as rents, and with
$2175, as proceeds of sale of other property not properly accounted for,
and in other respects; and it was ordered that, "as thus amended, the
account of the administratrix be approved and homologated and the
funds distributed accordingly."

Upon her failing to settle with creditors according to this account,
a demand execution was issued against her and returned unsatisfied.
Thereupon, the creditors, finding that the administratrix had no prop-
erty subject to execution, and that the surety on her bond was insolvent
and worthless, and convinced that the sale to Atkins was a simulation,
and that he had never paid the price, brought a direct action, in their
own right, against the present defendants, setting up these facts and
praying that, unless Atkins should comply with the condition of the
sale and pay the price, the property should be decreed to belong to
the succession, and should be restored thereto.

To this suit, Atkins interposed exceptions, the nature of which it is
not necessary to state, which were sustained by this Court, which said
that, on the failure of the administratrix to pay over the proceeds of the
sale, the remedy of the creditors was to apply for her destitution from
office and the appointment of a new administrator "who would then in-
quire whether the price has, or has not, been paid by Atkins, and whether
he holds under a real or simulated title." Swan vs. Gayle, 29 An. 574.

Acting on this express suggestion, the creditors applied for, and ob-
tained, the destitution of Mrs. Gayle, and the appointment of the present
plaintiff as administrator, who brought this action, alleging, in sub-
stance, that the adjudication of the property to Atkins, who was the
brother of the administratrix, was an attempt, by collusion between
them, to place the property beyond the reach of the creditors; that the
pretended price had never been paid; that Atkins had not the means to
make the purchase and had not done so; that plaintiff had called upon
him for payment of the pretended price, which had been refused; that
the administratrix, who was residing on the property at the time of the
sale, had continued to reside there ever since, and there had been no
real change of possession; and he demands the nullity of the sale that
the property be decreed to belong to the succession and restored to
his possession as administrator, and for rents at the rate of $600 per
annum.

Several technical defenses are interposed, as follows:

1st. That the succession of W. H. Gayle was closed by the homolo-

gation of the final account of the administratrix; that a new administrator, therefore, could not be appointed, and that plaintiff is thus without capacity to stand in judgment.

Manifestly the homologation of the final account did not close the succession or terminate the administration thereof. The homologation only fixed and defined the duties of the administratrix in paying out and distributing its funds in accordance therewith. Not until she had actually complied with the judgment, could she be discharged; and, as she never did comply, her office did not terminate, the succession remained open, and the court was entirely competent to destitute her, and appoint a new administrator.

2nd. The petition was excepted to, as combining inconsistent actions, viz, the revocatory action and the action in declaration of simulation, and plaintiff was required to elect. Without deciding whether or not those two actions are inconsistent, we deem it sufficient to say, with the District Judge, that the petition discloses a sufficient action to declare a simulation, and that no other remedy is asked.

3rd. The plea of *res judicata.* This plea, in a technical sense, certainly has no application. It will not be pretended that the *cause of action* set up in this case has been determined by any prior judgment. Counsel, however, evidently intends to plead mere estoppel resulting from prior judicial allegations and proceedings, all based on the supposition that this property had been really sold, that the price had been paid, and was actually in the hands of the administratrix, which suppositions were based on the official declarations of the administratrix, which the creditors had no right to question or attack and which they were bound, at least in the proceedings referred to, to accept as true.

There is absolutely nothing in those proceedings to estop the present plaintiff, as representative of the creditors, to prosecute this action based upon the failure of the former administratrix to pay over the funds which she pretended to have in hand, upon the natural consequent inquiry as to whether she had ever received said funds, and upon the alleged discovery of the fraudulent simulation now charged.

4th. The exception of prescription to the claims of creditors represented by the administrator, does not "lie in the mouths" of defendants, is irrelevant to the present issue, and cannot be raised between the present parties. Moreover, in the judgment of the Supreme Court on the final account, rendered in July, 1875, we find a judicial recognition of the claims of these creditors, which is a judgment in their favor, and certainly not perempted.

## On the Merits.

Let us present a *tableau* of the facts as they appear to our minds, upon the record.

1st. Mrs. Gayle and Atkins are brother and sister, living together in the closest relations of family intimacy.

2nd. The property in controversy was the family residence of Mrs. Gayle, occupied by her up to the time of the sale, Mr. Atkins, unmarried, living in her family. After the sale, the house continued in precisely the same occupation, showing no change of possession, except that constructive change resulting from co-occupancy and based on the legal principle that possession follows title. There were no such actual delivery and exclusive possession by the vendee as, of themselves, to raise a powerful presumption of change of ownership. On the contrary, the possession remained practically the same before as after the sale, and was entirely consistent with the continued ownership of Mrs. Gayle. Although the taxes have since been paid in the name of Atkins, the payments are not proved to have been made with his own money.

3rd. At the time of the sale, Mrs. Gayle was urging mortgage claims against the succession, which, if allowed, would have absorbed a large portion of the proceeds of the sale, and which might, therefore, have reasonably suggested a sham sale, under the desire to retain her home, and under the expectation that a large part of the proceeds would go to herself.

4th. When the proceeds of sale were demanded of her, after the final judgment on her account, she said she had no money, and from the return on the execution, it appears she had no property. Now, if she received this money, she must either have had it, or she must have spent it; and as she has it not, and does not show that she has spent it, the presumption arises that she never had it.

5th. When the title of Atkins was attacked in direct action by the creditors on the ground of simulation, instead of meeting and refuting the charge promptly and squarely, he defended on technical exceptions, and thus defeated that action, showing an unwillingness to meet the issue, which is always suspicious in such cases.

6th. When this suit is brought, Mrs. Gayle, though duly cited, suffers issue to be joined by default, and does not even file a judicial denial of the truth of plaintiff's allegations.

7th. Her co-defendant resorts to several successive exceptions in order to avoid pleading to the merits.

8th. The evidence establishes that Atkins, at the date of said sale, was not regarded as a man of means or as likely to have at his command so considerable a sum of ready money as five thousand dollars, and that his occupation had been exclusively in subordinate clerical positions in the offices of the Register in Bankruptcy and clerk of court. Although some evidence was offered showing his revenues and his economical habits, and establishing that it was possible that he

might have accumulated such an amount of money, no witness swears to any knowledge of his ever having actually had any considerable means, and he himself, when on the stand, fails to prove that he ever did.

9th. Mrs. Gayle does not appear as a witness in the case, and Mr. Atkins, though taking the stand, confines his testimony to the question of his revenues during certain years. He fails to swear either that he had the means to make this purchase, or that he did make it, or that he ever paid the price, and fails to contradict, in his evidence, any allegation of the petition. When plaintiff's counsel sought, on cross-examination, to question him touching the real issues of the case, he was met by the objection that the cross-examination must be confined to the matters upon which he had been examined in chief, and that, in order to examine him on other matters, plaintiff must make him his own witness. This objection was sustained by the judge *a quo*, in opposition to the well-settled practice of Louisiana courts. Durnford vs. Clark, 1 M. 202; Davidson vs. Lallande, 12 An. 828; Nicholson vs. Desobry, 14 An. 84. Neither the judge nor opposing counsel quotes any contrary Louisiana authority, nor have we discovered any. The ruling of the Supreme Court of the United States is in accord with the judge's ruling; but the rule adopted by this Court is followed in England and in many of the States. Greenleaf on Ev. We see no reason to change it, and hold the judge's ruling to be clearly erroneous.

The laws which govern intellectual belief, like the dictates of consciousness, are imperious and cannot be disobeyed.

The mind, after contemplating and weighing the facts and circumstances above stated, is irresistibly convinced that the allegations of plaintiff's petition must be true. It recoils from any other hypothesis, as absolutely inconsistent with the rules and motives of human conduct. Why should Mrs. Gayle fail to deny the allegations of plaintiff's petition if they were not true? Why should both defendants fail to appear and testify to the verity of the sale and the payment of the price, if they could truthfully swear to those simple facts and thereby put an end to a litigation, involving not only their means, but, to some extent, their reputations?

These questions admit of no answer, acceptable to reason, except that if they had testified at all, their statements would not have sustained their defense.

The facts as to these transactions were necessarily known to them, and may not have been known to any other person whatever. To say that a charge of simulation could not be established without absolute affirmative proof of facts, lying within the knowledge of no one except the parties charged, would, in effect, abolish the action for that purpose, by imposing upon the plaintiff an impossible task.

The law is guilty of no such absurdity.

The averment of plaintiff that no price was paid, as the consideration of this sale, is a negative averment. The general rule is laid down by Mr. Greenleaf to be that "when the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, that averment is taken as true unless disproved by that party." 1 Greenleaf Ev., section 79.

The same doctrine has been applied by this Court in many cases. 8 N. S. 462; 14 La. 448; 4 An. 295; 1 La. 379; 15 La. 60; 4 An. 135.

With reference to attacks upon titles on the ground of simulation, the doctrine is not extended to the point that the mere averment that there was no real sale and no price paid, puts the opposite party upon proof of reality and payment. But the truth is recognized that simulation, from its nature, can, usually, be proved only by indirect and circumstantial evidence; and when circumstances are established sufficient to throw doubt upon the reality of the sale, the burden of proof is shifted to the parties, who know the facts and can establish them by their evidence. When, under such circumstances, they fail to furnish the evidence clearly within their power, all the presumptions of law are against them. 2 N. S. 66; 12 R. 95; 6 An. 646; 10 An. 647; 13 An. 397; 28 An. 928; 8 An. 61.

We think the facts, and acts and circumstances established by the record, independent of the failure of defendants to verify, by their own evidence, their defense, are sufficient, to establish such *prima facie* proof of simulation as to throw the burden of contradictory proof upon the defendants, and that, unless this proof is furnished by other evidence in the record, their failure to testify must be conclusive against them.

The judge *a quo* concluded that the record furnished proof that Mrs. Gayle had paid out to the creditors a considerable amount of money which could have been received from no other source than from the price of this sale paid to her by Atkins. We have examined very critically the accounts and vouchers, and fail to discover proof that Mrs. Gayle has made any payments since the date of the sale, beyond the amount of funds in her hands from other sources. The original vouchers produced by defendant in this Court are dated long prior to the sale.

We have followed carefully the statements and calculations made by the able counsel on either side. We may admit the sufficiency of the accounts to establish the payment of items stated therein to have been paid; but certainly they do not establish the payment of other items set down therein as *to be paid*, in absence of vouchers or other proof.

There is no proof of any payments made *since* the sale which might

King, Administrator, vs. Atkins et al.

not have been paid from other sources. We have no concern with the question of where Mrs. Gayle obtained the means to make payments made long before the sale. They could not have been made from the price of the sale.

We cannot confirm the lower judge's opinion on this point, and, therefore, the record leaves the defendants without any proof whatever of the reality of the sale, the burden of which proof was, as we have shown, thrown on them.

They oppose to strong circumstantial evidence detailed by us literally nothing but the paper title, the verity and reality of which are the questions in controversy, which might have been, and were not, settled on the simple oaths of the defendants themselves.

To believe that Mrs. Gayle received this price, is to convict her of embezzlement of funds confided to her in a fiduciary capacity, of which we do not believe her to have been guilty. It equally convicts both her and Atkins of an outrage upon common sense and their own interests, in their failure to prove simple facts within their own knowledge, and the concealment of which, if favorable to their case, could have no possible motive. Our solution is the following: In entering upon this transaction, the defendants contemplated no wrong upon any person. They honestly believed, on legal advice, that Mrs. Gayle had a valid legal mortgage on the property, which would absorb a large portion of the price and enable her to arrange for payment of the balance. Naturally anxious to retain her home, and forbidden to purchase in her own name, her brother bought for her. The decision of the Supreme Court nullifying her mortgage and subjecting her to onerous obligations, left her unable to carry out the arrangement. Now, though leaving their opponent to enforce the rights of the succession at law, both defendants are too honorable and conscientious to swear to non-existing facts, for the purpose even of saving a home.

The demand of plaintiff must prevail.

We find the admissions in the record that the property is worth thirty dollars per month as rent from date of sale, and that W. L. Atkins has paid taxes thereon to the amount of $963 25.

As to Mrs. Gayle, she being unrepresented and, therefore, not a party to the admission, it has no effect as to her, and there is no evidence upon which we can base a judgment against her for the rents.

As to Atkins, his possession of the property is disputed, and the nature and conditions of his co-occupancy with Mrs. Gayle are not established with sufficient certainty for us to apportion or decide the extent of his liability.

On the whole, we think it best to leave the question of rents on one hand, and taxes on the other, to be settled in another suit.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided and reversed; that the judgment by default against Mrs. Ann L. Gayle be now confirmed to the extent herein fixed; that there be judgment against both defendants setting aside and declaring null and void the adjudication to W. L. Atkins of the property known as the "Betin House," in the City of Monroe, and described in plaintiff's petition herein; declaring the said property to belong to the succession of Wm. H. Gayle, and that plaintiff, as administrator of said succession, be put in possession thereof; that the demand of plaintiff for rents be rejected as in case of nonsuit; and that defendants pay costs of the lower court and of this appeal.