(99 South. 337)

No. 25889.

## CALCASIEU NAT. BANK OF SOUTHWEST LOUISIANA v. CAMPBELL et al.

(Jan. 21, 1924. Rehearing Denied by Division C Feb. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. Fraudulent conveyances   261—Petition held sufficiently to allege defendant's "insolvency."

In an action to annul a mortgage as simulated, allegations that the common debtor was insolvent at the time of giving the mortgage *held* tantamount to an allegation that the liabilities exceeded the assets, which constitutes "insolvency," as defined by Code, art. 1985, and hence was sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

**2. Fraudulent conveyances ⬤☞163—Mortgage given with intent to conceal debtor's property to lender's knowledge held fraudulent.**

If, at the time of giving a mortgage alleged to be simulated, cash is advanced in collusion with the debtor to cover up his property, with the participation and knowledge of the lender that the purpose was to place it beyond the reach of creditors, the transaction is subject to attack as fraudulent.

**3. Fraudulent conveyances ⬤☞166—Mortgage held not simulated as to mortgagee having no knowledge of fraudulent purpose.**

Where, on an attack of a mortgage as simulated, it does not appear that the lender knew of the mortgagor's fraudulent purpose, the mortgage was not fraudulent, in view of Code, arts. 1978–1986.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Jerry Cline, Judge.

Action by the Calcasieu National Bank of Southwest Louisiana against Alfred S. Campbell and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Modisette & Adams, of Jennings, for appellants.

J. H. Heinen, of Jennings, and McCoy & Moss, of Lake Charles, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

DAWKINS, J. Plaintiff, a creditor of Alfred S. Campbell, brought this suit to annul as simulated, and in the alternative as a fraudulent preference, a special mortgage given on January 24, 1922, by the said defendant to his father Alfred Campbell.

Defendants, father and son, pleaded the reality of the transaction, and denied the charges of fraud.

The case was tried and submitted on the issues thus raised, and on the day it was decided below, but before decision, defendant mortgagee filed an exception of no cause of action, which was overruled, and there was judgment for plaintiff annulling the said mortgage as fraudulent. Defendant Alfred Campbell, mortgagee, alone appealed.

On August 30, 1923, appellant filed in this court a motion suggesting that, since the taking of this appeal, the common debtor, Alfred S. Campbell, had been adjudged a bankrupt and a trustee appointed for his estate. An order was issued by the Chief Justice making the trustee a party appellee, but he has made no appearance in this court.

Opinion.

In his brief appellant asks "that the judgment appealed from be reversed, and plaintiff's suit dismissed, and, in the alternative, if not rejected outright, that the judgment appealed from should be reversed and the case remanded, and the parties ordered to litigate their respective rights before the bankruptcy court, which alone has authority to administer the bankrupt's estate and distribute its assets."

We have no evidence before us, other than the motion and the admission of opposing counsel of the state of bankruptcy of the debtor, and it is doubtful if we could render a judgment, without the consent or authorization of the federal judge to the trustee to appear, which would be binding upon the officer of that court. On the other hand, that court, under the bankruptcy statute (section 64, par. 5 [U. S. Comp. St. § 9648]), is required to recognize the laws affecting liens, privileges, or preferences of the particular state in which it sits, in so far as they concern the rights of creditors, etc., unless there be a conflict with some law of the United States, or the bankruptcy law itself makes provision therefor, in which event, of course, the latter prevail. Under the showing made by this record no creditor, other than plaintiff, having assailed the mortgage of the appellant, and the debtor having gone into bankruptcy more than four months after the same was executed and recorded, the plaintiff and the appellant alone can be affected by the deci-

sion herein; and hence we can appreciate why the trustee representing creditors generally has not deemed it necessary to appear.

While, as heretofore suggested, our judgment may not be technically binding upon the bankruptcy court, we have no doubt that court will accept the construction placed upon the state's laws by its court of last resort, and hence can see no reason why we should not dispose of the issues of this case involving as it does, an interpretation of our statutory provisions. In other words, the real parties before us who are interested in, and will be affected by the judgment, are these two creditors, and not the trustee.

### Exception of No Cause of Action.

[1] The sense in which it is said that the petition does not disclose a cause of action is that the allegation of insolvency amounts to a conclusion of law, and that plaintiff should have charged the debtor's liabilities exceeded his assets. The Code itself, article, 1985, defines insolvency as follows:

"By being in insolvent circumstances is meant, that the whole property and credits are not equal in amount, at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount. To prove the state of his affairs at the period of the contract, the debtor may, at the option of the plaintiff, be examined as a witness in the action for annulling the contract."

So that, when plaintiff alleged the common debtor to be insolvent at the time of giving the mortgage assailed, the result was to charge just what appellant says should have been charged, i. e., that liabilities exceeded assets. And it may further be noted that under the article just quoted, when the debts had been shown, the burden shifted to appellant "to show property to an equal or greater amount."

We have therefore concluded that the authorities cited in support of the exception are inapplicable, and that it was correctly overruled.

### On the Merits.

The record discloses that prior to 1919 appellant Alfred Campbell and one James Maslin were the joint owners of a plantation in Jefferson Davis parish, and in that year the latter sold to appellant's son, Alfred S. Campbell, his undivided one-half interest therein; that the consideration consisted of the assumption of an existing mortgage, some cash, Liberty bonds, and a plain note of the purchaser for $7,793, which note was also signed and indorsed by the appellant as surety, while the deed itself, other than as to the mortgage assumed, recited the payment of cash, no mortgage being retained. The property was then cultivated by the son for two or three years under an arrangement by which he was to pay part of the crops for rent, and the plaintiff furnished supplies to make the crops. In this way the indebtedness claimed in this suit arose. Appellant's said son paid the interest on the plain note, signed and indorsed by the father as aforesaid, up to March 1, 1920, and reduced the principal to $7,500. Shortly before January 24, 1922, the common debtor, apparently in compliance with an arrangement previously agreed upon, executed in favor of his said father a mortgage upon his one undivided half of the property for $8,600. Shortly after, the father went to St. Louis and purchased from Maslin the note upon which he was surety. Returning to Louisiana, he surrendered this note to the son for the one for $8,600 secured by mortgage, which covered approximately the principal of the Maslin note ($7,500) and accumulated interest (8 per cent. from March 1, 1920, to January 24, 1922).

Appellant was living on the farm with his said son, and, although he denied a knowledge of the latter's financial affairs, the lower judge found, and we agree with him, that

the father must have known of the condition of insolvency. The son had not paid his rent, part of which was due to appellant; the interest on the note for which the father was surety was nearly two years overdue; and other sums were due appellant. While the note for $7,500 had nearly two years to run before maturity, conditions seemed to warrant that appellant would ultimately have it to pay, and as to him it was unsecured by mortgage or otherwise. Taken all in all, we think the evidence establishes a purpose, both on the part of appellant and his son, to create an unfair preference to the prejudice of other creditors, and that the giving of the mortgage has had that effect.

Appellant also contends that there existed in favor of Maslin a vendor's lien, by virtue of the sale in which the note for $7,500 was given as part of the purchase price, and that he, appellant, acquired that right, either as a result of his purchase of the note or by legal subrogation, if it should be held that he, the surety, had paid it. However, the deed recited a cash consideration, and as to third persons without notice the record could not be disputed. Even conceding arguendo that such was the effect of the transaction between Maslin and appellant, it would not bind the plaintiff. R. C. C. 2266.

Although it is said in a supplemental brief filed by appellee that the issue was not made before the lower court, both in oral argument and in brief in this court, appellant contends the mortgage assailed was given for a present valid consideration, and that therefore it cannot be annulled under the revocatory action provided by the Code. However, the case is before us for determination upon any issue which results from the pleadings and the evidence, and we know of no rule which precludes one from asserting any legal result which may flow from the record as so made up, merely because it was not urged before the lower court.

Among other things, it is said in the brief of appellant that:

"These kinds of transactions take place daily, and, if the new creditor advancing the money with which to pay the old creditor is to be subjected to such perils and hazards, many of the banking institutions and money lenders of this country would find themselves in an embarrassed condition, for there are hundreds of thousands of dollars advanced every day for just such purposes."

[2] As heretofore stated, it is true that the obligation of $7,500 due Maslin, and upon which appellant was surety, had not matured, and his liability had not become fixed; but the interest was nearly two years in arrears, and the condition of the principal's affairs, to the knowledge of the surety, was such that he, the surety, was almost certain to have to pay the debt. The debt itself was not secured by mortgage, and hence no privilege could be had without resort to the mortgage as was done. Even if cash were advanced at the time of the mortgage, if it was done in collusion with the debtor to cover up his property, with the participation and knowledge of the lender that the purpose was to place it beyond the reach of creditors, the transaction might be assailed as fraudulent. See Bank of Berwick et al. v. George Vinson Shingle & Mfg. Co., Ltd., et al., 124 La. 1000, 50 South. 823, 26 L. R. A. (N. S.) 1068, and annotated note.

[3] However, this recognition of a codal remedy against fraud need cause no embarrassment for bona fide business men, for it is clearly provided by the Code, articles 1978 to 1986, both inclusive, that the party dealing with the debtor must have a knowledge of the fraudulent purpose and participate therein. But, as to creditors seeking a fraudulent preference, article 1984 declares:

"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor."

And article 1982 further provides:

"If the party, with whom the debtor contracted be in fraud as well as the debtor, he shall not, on the annulling the contract be entitled to a restitution of the price or consideration he may have paid, except for so much as he shall prove has inured to the benefit of the creditors by adding to the amount of property applicable to the payment of their debts; but if the only consideration be a sum due from such debtor. to the party with whom he contracted, then the only restitution to be made is the placing the parties in the situation in which they were before the contract complained of was made."

It is not pretended in this case, nor, as a matter of fact, did the transaction of the plaintiff with his son add anything to the latter's assets. As to the other creditors, Maslin had no greater rights against the property than they enjoyed.

As to the advantage gained by plaintiff, the Code itself seems to accord to the successful creditor in a proceeding to annul a fraudulent sale or mortgage, a privilege as the reward for his vigilance, R. C. 1977; Succession of Cottingham, 29 La. Ann. 669; Hewitt v. Buvens, 51 La. Ann. 325, 25 South. 122; La. Dig. vol. 3, pp. 754, 755, verbo Fraudulent Conveyances.

For the reasons assigned, the judgment appealed from is affirmed, with costs.

Rehearing refused by Division C, composed. of Justices OVERTON, ST. PAUL, and THOMPSON.