172 So. 155

**FIRST NAT. BANK OF RUSTON v. JONES et al.**

No. 33503.

Jan. 4, 1937.

Scarborough & Barham, of Ruston, for appellants.

Elder & Elder, of Ruston, for appellee.

ODOM, Justice.

Plaintiff brought this suit for the double purpose of obtaining judgment against one of the defendants, R. L. Jones, for the amount of a promissory note, and to have set aside a sale made by R. L. Jones, the maker of the note, to his two daughters, the other defendants, of certain real estate situated in Lincoln parish. There was judgment in favor of the plaintiff as prayed for on both branches of the case. This appeal followed.

Counsel for the defendant R. L. Jones state in their brief that they do not urge a reversal of the money judgment against him. They do, however, argue that the judgment setting aside the sale made by him to his two daughters is erroneous and should be reversed.

On October 6, 1933, R. L. Jones, plaintiff's debtor, sold by notarial act to his two daughters, Mrs. Ruth Jones Weir and Mrs. Vada Jones Harrell, 800 acres of land, two lots in the town of Simsboro, one 1925 model Ford car, 8 head of horses and mules, 75 head of cows and calves, 25 head of hogs, and two wagons, for the recited consideration of "Five thousand and no/100 ($5,000.00) dollars cash, in hand paid, the receipt and sufficiency whereof is hereby acknowledged." Following this description of the property is this clause: "Being all the horses, mules, cows and hogs owned by the vendor at this time."

The deed recites that the vendor is a married man, that the two vendees are married and that they, as well as the vendor, "personally came" before the notary. But the deed is not signed by the vendees.

The deed was recorded in the conveyance records of Lincoln parish. The present suit to set aside this transfer was filed by the bank on May 10, 1934. The bank alleged that the vendor, R. L. Jones, was indebted unto it in the sum of $1,-854 with 8 per cent. interest thereon from October 1, 1932, and attorney's fees, as evidenced by one promissory note; that the transfer of the property by R. L. Jones to his daughters was not real, but was a sham, a simulation pure and simple; that the recited consideration of $5,000

was never paid and was never intended to be paid; that the deed was passed for the sole purpose of placing the property of the vendor beyond the reach of his creditors, and particularly beyond the reach of the petitioner; that the property attempted to be conveyed was all the property owned by the vendor and that the conveyance left the vendor insolvent, and that the vendor, its debtor, did not at the time the transfer was made own any other property out of which the plaintiff's claim could be satisfied; that the transfer was prejudicial to plaintiff's rights and injured it.

Plaintiff further alleged that it was never intended that the vendees, the daughters of the vendor, should become the owners of the property, but, on the contrary, it was intended that they should hold the same for the use and benefit of their father, the vendor; that possession of the property was never delivered to the vendees, and that they did not have possession thereof at the time the suit was filed, the possession being retained and then held by the vendor; that the vendees had never at any time exercised acts of ownership over the property and that the vendor continued all along to collect the rents and revenues produced by the property. The plaintiff further alleged that in order that it might be able to collect its claim from R. L. Jones, it would be necessary to have the pretended sale set aside and the deed canceled from the records, and it so prayed.

R. L. Jones and his two daughters were made defendants. They filed joint answer in which they denied that the sale was a sham, a simulation, and alleged that it was genuine. They admit, however, that the recited consideration of $5,000 was not "cash, in hand paid" at the time the deed was passed as recited therein, but that there was in fact a consideration paid for the property; and as to how and when it was paid they allege:

Paragraph 11 of defendants' answer:

"Further answering the demands of the plaintiff, defendants show that Mrs. Ruth Jones Weir over a period of about ten years preceding the date of October 6th, 1933, advanced to R. L. Jones, while she was teaching school in the Public Schools of the State of Louisiana, the sum of $4,751.00 cash, under the agreement and understanding that said money was being paid on the purchase price of real estate and a house to be deeded to her by the said R. L. Jones, and that this $4,751.00 is a part of the cash consideration stated in the deed set out and described in paragraph six of plaintiff's petition."

Paragraph 12 of defendants' answer:

"Defendants further show that Mrs. Vada Jones Harrell over a period of about six years preceding the date of October 6th, 1933, advanced to R. L. Jones the sum of $1,750.00 in cash that she had earned while teaching school in the Public Schools of the State of Louisiana under the agreement and understanding that said money was advanced and paid to the said R. L. Jones in consideration of his deeding to the said Mrs. Vada Jones Harrell a home and farm, and that the said $1,750.00 is a part of the consideration referred to

in the deed set out and described in paragraph six of plaintiff's petition, a certified copy of which deed is attached to plaintiff's petition."

We note that it is alleged that Mrs. Weir advanced to her father $4,751, and that Mrs. Harrell, the other daughter, advanced to him $1,750, the total of these sum being $6,501, or $1,501 more than the amount stated in the deed.

As to the plaintiff's allegation that the vendees did not take possession of the property and are not now in possession of it, defendants answer that they did and do have and are now exercising possession "by themselves, through their husbands and through their father, R. L. Jones, who is now managing the said property for Mrs. Ruth Jones Weir and Mrs. Vada Jones Harrell on the basis of a monthly salary"; that the arrangement to have their father manage the property "on a monthly salary" was necessary because Mrs. Weir's husband had accepted a position which took him to South America; that this made it necessary "to employ a manager for the remainder of the year 1934, which they did, "and they employed R. L. Jones."

On the trial of the case plaintiff offered in evidence the promissory note sued on, amounting to $1,854, a collateral note of R. L. Jones securing it, and the deed sought to be set aside. Plaintiff also offered in evidence a deed dated October 1, 1929, by which R. L. Jones sold to T. R. Weir, husband of Mrs. Ruth Jones Weir, one of these defendants, 72 acres of land for a recited consideration of $3,000 cash,

in hand paid. By reference to the description in this deed we note that the land conveyed by the deed is situated in the vicinity of that described in the deed here sought to be set aside.

Plaintiff called several witnesses, including C. W. Tatum, vice president and cashier of the defunct Bank of Simsboro, from which it had acquired the note sued on. Mr. Tatum said that he knew R. L. Jones and his two daughters well and had known them for a number of years; that R. L. Jones had been a customer of the bank and that he, Tatum, had never known his daughters to advance to him any money. He said that within six months prior to the date of the trial of the case he had seen R. L. Jones riding in a Ford sedan car; and while he did not say so, the inference left was that this was the same car included in the deed. Other witnesses gave similar testimony with reference to R. L. Jones' use of the car.

Mr. Tatum testified further that at one time Mrs. Weir and Mrs. Harrell came to the bank with their father, R. L. Jones, bringing a check of some insurance company for $250, payable to the two daughters, which check was indorsed by the payees and R. L. Jones, and that they drew the cash for it. Mr. Wilder, another employee of the Bank of Simsboro, said that this check was made payable to Mrs. Weir and Mrs. Harrell, who, with R. L. Jones, indorsed it, and that Mr. Jones cashed the check. These witnesses did not say so in so many words, but the inference to be drawn from the testimony is that this check was to cover a fire loss.

Another witness called by plaintiff said that he was in the mercantile business at Simsboro and that R. L. Jones had been trading with him for a number of years; that he purchased such supplies as flour, meal, and sugar. Asked if R. L. Jones had any hands on his place, the witness said he was not sure of that. "I know there is a yellow negro came in there last year and paid cash for it and maybe Uncle Fate (meaning R. L. Jones) would come in there and say let so and so have it and he will pay you tomorrow or maybe Uncle Fate would pay for it." The testimony of this witness was meager, but apparently he intended to convey the idea that Mr. Jones was furnishing hands on some plantation. Some of the witnesses called by plaintiff said they understood that Mrs. Weir lived on the land described in the deed, but a man named John Paul Jones said his understanding was that she lived "on a place just below Uncle Fate's, that turns south."

As to the sale made by R. L. Jones to T. R. Weir, husband of Mrs. Ruth Jones Weir, on October 1, 1929, Mr. C. W. Tatum, the notary before whom the deed was passed, said:

"Mr. Jones talked to me some about this transaction and said that he intended for his daughter Mrs. Weir to own this particular piece of property, that Roosevelt, Mr. Weir, rather, was able to pay something on the property and that he would let him pay for at least a portion of the property. I didn't make that just as clear * * * Mr. Jones told me on several occasions that he intended to give this place to Ruth, his daughter."

This deed, as we have said, was passed on October 1, 1929, just four years prior to the date on which R. L. Jones sold to his two daughters the 800-acre tract of land and other property.

In the joint answer filed by Mrs. Weir and the other defendants it is alleged that over a period of ten years prior to October 6, 1933, Mrs. Weir had advanced to her father from time to time $4,751, which she had saved from her earnings as a teacher in the public schools "under the agreement and understanding that said money was being paid on the purchase price of real estate and a house to be deeded to her by the said R. L. Jones." Nothing is said in the answer about what particular property Mrs. Weir was to get.

Plaintiff alleged that the sale by its debtor R. L. Jones to his daughters left him insolvent and that plaintiff was injured thereby. It is not always necessary for the plaintiff in an action of this kind to show that his debtor was left insolvent. Price v. Florsheim et al., 174 La. 945, 142 So. 135. But it is necessary for the plaintiff to show that he was injured by the transfer, and certainly if the transfer left the debtor insolvent, the creditor is injured thereby.

No proof of insolvency was administered except this: Plaintiff showed that R. L. Jones owed the bank $1,854 with interest for several years. Article 1985 of the Revised Civil Code, after saying what is meant by being in insolvent circumstances, goes on: "And if he, who alleges the insolvency shows the amount of debts, it is

incumbent on the other party to show property to an equal or greater amount."

In the case of In re Morgan & Co. et al., 155 La. 915, 99 So. 696, it was held that a creditor shows insolvency of his debtor by proving indebtedness, in view of article 1985 of the Civil Code, imposing the burden on the party denying insolvency to show property exceeding the indebtedness. Calcasieu National Bank v. Campbell et al., 155 La. 378, 99 So. 337. Plaintiff, therefore, proved that R. L. Jones, its debtor, was insolvent, and because of the insolvency has shown injury and prejudice on account of the transaction.

■ The record therefore shows, either by proof administered or by admissions made in the answer of defendants, first, that the consideration of $5,000 recited in the deed was not paid as the deed says, "cash in hand" at the time of the transfer; second, that the vendor remained in possession of the property transferred; third, that after the transfer of the property to his daughters, the debtor continued to administer it; fourth, that the transfer left the debtor insolvent; fifth, that the transfer made by the debtor was to members of his immediate family, his daughters.

In view of all this, we hold that plaintiff made out a prima facie case of simulation, and having done so, the burden was shifted to the defendants to prove the verity of the transaction.

In their joint answer defendants admitted that they did not pay to their father $5,000 cash when the transfer was made, but affirmatively averred that over a period of some ten years they had advanced to him from time to time sums in excess of that amount. They admitted that at the time the suit was filed and tried their father, who had made the transfer to them, was on the property transferred and was managing the farm, but affirmatively set up the reasons why he was managing it, that he was their agent, employed on a salary basis to administer the property for them, and affirmatively alleged that the transfer did not leave R. L. Jones, plaintiff's debtor, insolvent.

■ The facts alleged by defendants, if facts they were, were peculiarly within their knowledge, and it was their duty, under the circumstances, to prove them. Each of them was in court when plaintiff closed its case. Yet they offered no testimony. They said not a word, offered no documents. It was their duty to speak, and yet they sat mute.

The testimony offered by the plaintiff and the admissions made by the defendants in their joint answer made out for plaintiff at least a prima facie case of simulation.

By the express provisions of article 1921 of the Revised Civil Code, where a party transfers immovable property to another and the sale is attacked as a fraud or simulation, proof that the vendor remained in possession for a longer time than was necessary to deliver actual possession throws the burden upon the transferee to show that the transaction was bona fide.

■ It is true that in suits to set aside transfers of real estate on the ground of fraud or simulation it is necessary for

the party attacking the transfer to do more than merely allege that the transfer was fraudulent or simulated. But when it is so alleged and the plaintiff offers testimony which is sufficient to raise a clear presumption that the transaction was not genuine, the burden is shifted to the defendant to show the verity of the transfer. And especially is this true when the defendant in his anwer affirmatively sets forth that he is able, ready, and willing to furnish proof that the transfer was made in good faith for a valid and sufficient consideration. In the case of King, Adm'r, v. Atkins et al., 33 La.Ann. 1057, on page 1065, this Court said:

"With reference to attacks upon titles on the ground of simulation, the doctrine is not extended to the point that the mere averment that there was no real sale and no price paid, puts the opposite party upon proof of reality and payment. But the truth is recognized that simulation, from its nature, can, usually, be proved only by indirect and circumstantial evidence; and when circumstances are established sufficient to throw doubt upon the reality of the sale, the burden of proof is shifted to the parties, who know the facts and can establish them by their evidence. When, under such circumstances, they fail to furnish the evidence clearly within their power, all the presumptions of law are. against them." Citing Hodge v. Morgan, 2 Mart.(N.S.) 61,

66; Fisher v. Moore, 12 Rob. 95; Birdsale v. Lakey, 6 La.Ann. 646; Offutt v. Scribner, 10 La.Ann. 639, 647; Ford v. Simmons, 13 La.Ann. 397; Russell v. Keefe, 28 La.Ann. 928; Brown v. Smith, 8 La.Ann. 59, 61.

In Goothye v. Delatour et al., 111 La. 766, 35 So. 896, 897, it was held, to quote paragraph 7 of the syllabus, that:

"Where a sale is attacked as simulated, and a prima facie case of simulation is made out, and the purchaser fails to offer rebuttal testimony to show that he actually paid anything for the property, the sale will be decreed to be a simulation."

In Leon Godchaux Co. v. Di Maggio, 133 La. 199, 62 So. 631, it was held that where one claims that a sale is a mere simulation, he must offer proof that will at least create a doubt as to the genuineness of the sale, and it was there held that proof that the supposed vendor retained possession of the property was sufficient to shift the burden of proof to the defendant.

The plaintiff clearly showed facts sufficient to make out a prima facie case of simulation, which cast the burden upon the defendant to show the verity of the transaction. The defendants having failed to discharge the burden the law lays upon them, the transaction attacked must be held to have been a simulation.

Judgment affirmed.