McBRIDE, Judge.
Plaintiff, who holds an executory judgment dated March 17, 1958, against her former husband for $1,337 representing unpaid alimony, seeks by this suit to set aside a sale of certain real property, which constituted his only asset, made by the judgment debtor, on the ground that said sale is as to her fraudulent and simulated, and she prays that it be avoided and that the property attempted to be conveyed by said sale be decreed to be subject to execution under her judgment against the vendor. Both the vendor and vendee, the latter being the son of the vendor by a former marriage, were impleaded as defendants, and both were cited to appear and make answer to the demands.
The vendor filed an answer to the petition which generally denies all allegations made by plaintiff, but the vendee filed no pleadings of any kind, nor was a default judgment ever taken against him. Notwithstanding the shape of the record, it clearly appearing therefrom there was no joinder of issue as to the vendee, the case proceeded to trial in the lower court, the result being that judgment was rendered in favor of the vendor dismissing the suit. The judgment is silent with respect to the demand against the vendee. This appeal was taken by plaintiff from the judgment by motion in open court at the same term of court at which the judgment was rendered, and it is now argued to us by appellant that the judgment is contrary to the law and the evidence and should be reversed and a judgment rendered in plaintiff’s favor against both defendants as prayed for.
Neither of the defendants appeared in this court either in personam or through counsel, and no briefs were filed on their behalf.
The law of this state is well settled that a sale of property fraudulently made cannot be set aside without proceedings being taken against the vendee, he being deemed an indispensable party. Yocum v. Bullit, 6 Mart.,N.S., 324; Potier v. Harman, 1 Rob. 525, Id., 1 Rob. 527; Lawrence v. Bowman, 6 Rob. 21; Hyde v. Craddick, 10 Rob. 387; Zimmerman v. Fitch, 28 La.Ann. 454; Johnson v. Mayer, 30 La.Ann. 1203; Black v. Bordelon, 38 La.Ann. 696; Trounstine v. Ware, 39 La.Ann. 939, 3 So. 122; Blum & Co. v. Wyly, 111 La. 1092, 36 So. 202.
This presents the first question requiring a decision — whether in the absence of an answer or a default against the vendee any rights of plaintiff as against him could be adjudicated at the trial below, and if so *885 whether the judgment which dismissed the suit insofar as the vendor is concerned also has the effect of dismissing the plaintiff’s suit as against the vendee.
Although there was no technical and express joinder of issue by reason of an answer being filed by the vendee or a tacit joinder of issue by reason of a default judgment having been taken against him (C.P. art. 357 et seq.), there was in effect joinder of issue in that the vendee was present in the courtroom upon the trial of the case and permitted himself, without objection, to be placed on the witness stand for the purpose of cross-examination by plaintiff’s counsel in accordance with LSA-R.S. 13:3662. Thus because of the vendee’s participation in the trial as a defendant, it is our opinion that he has forever estopped himself from protesting that no judgment, either for or against him, could legally be rendered in the case in the absence of a joinder of issue as provided for in the articles of the Code of Practice. The vendee’s course of conduct amounts to a waiver of any right he may have had to complain that the cause was not at issue.
In Levenson v. Chancellor, La.App., 68 So.2d 116, 122, this court said:
“The filing of an answer or entry of default before rendition of a judgment is waived where a litigant appears and participates in the trial. Ducote v. Ducote, 183 La. 886, 165 So. 133; McLellan v. Rosser, 116 La. 801, 802, 41 So. 97; Battaile v. O’Neil, 3 La.Ann. 229; Northwestern Bottle Co. v. Rosen, 8 La.App. 284 (writs refused).”
In the case lastly cited, Northwestern Bottle Co. v. Rosen, we had this to say:
“In this case the taking of a default was a mere technicality the absence of which has not affected Rosen injuriously nor deprived him of any defense; nor would it have been of any advantage to Rosen had a default been taken. If Rosen filed no answer to the call in warranty, he had no one to blame but himself, Hazard v. Agricultural Bank of Miss., 11 R[ob]. [326], 336; and it does not appear that the absence of that answer has injured him in his defense. Allain & Tremoulet v. Truxillo, 14 La. 297, 298. He testified as a, witness and introduced other witnesses in his defense and pleaded and urged all the defenses he thought of. * * ”
The Supreme Court in Ducote v. Ducote, 183 La. 886, 165 So. 133, 134, said:
“The articles of the Code of Practice requiring that issue be joined by answer or default as a condition precedent for the rendition of a judgment cannot in any sense be considered as laws of public order or good morals, but rather as laws enacted for the protection of a limited class of individuals, which do not concern the general public. A derogation from those laws cannot be interpreted as a breach of good morals or of the public good. They merely create a privilege in favor of an individual which he is at liberty to renounce at any time. If, notwithstanding the privilege granted him by law, a defendant consents to the trial of his case without insisting on the filing of an answer or the entering of a default, how can he be heard to complain of the judgment? Such renunciation on defendant’s part does not injure his legal rights. Neither is it violative of the rights of others, nor contrary to the public good.”
This court also concludes that even though the judgment is silent as to a dismissal of the suit as against the vendee, it in effect runs in favor of the vendee and carries with it a dismissal of the demands against him. We repeat that the vendee is an indispensable party to this suit to have the sale set aside as being simulated and fraudulent as to the plaintiff, and we cannot believe that the learned trial judge meant to hear the case only as to the demands made against the vendor and omit from his *886 consideration the demands plaintiff made against the vendee. Otherwise, we would have to say that our brother below was handling the case piecemeal when, as a matter of fact, the cause is of such nature that the proceedings against both defendants should be carried on simultaneously. We believe this was done, and though the judgment makes no mention of the dismissal of the suit as against the other defendant, the judgment may be taken as having such effect and the present appeal brings before us as appellees both the defendants.
Briefly reviewing the evidence, we find that the notary public who officiated at the sale admitted that there was no check or money passed between the parties at the time of the confection of the act, notwithstanding the act recites the consideration was $7,500 which was paid in cash. The only statements made by defendants appear from their cross-examination conducted by plaintiff’s attorney. They each claim that the consideration was $7,-500 and that said sum was paid the vendor, but we notice that there is a glaring discrepancy in their narratives of the details surrounding the payment of the purchase price. The vendor claims he owed his son $2,500 and that he received the balance of $5,000 from him “a little at a time” subsequent to the sale. Contrasted to this is the son’s story that “around the date of the sale” he borrowed the $5,000 from his two uncles and paid it to his father. He admits he gave no note or mortgage to his uncles to evidence the loan.
We see no need in reviewing the balance of the testimony elicited from the parties, except to make the observation that the vendee is a young man without assets earning less than $65 per week and the further observation that notwithstanding the sale, the father still resides on the property. We leave the record with a conviction that there was no consideration at all, and that the sale was simulated and but a sham and a scheme to shield the property from plaintiff’s levy thereon on her judgment for alimony against her former husband.
In the case of First National Bank of Ruston v. Jones, 186 La. 269, 172 So. 155, 158, it was held that upon it being shown that the consideration recited in the deed as “cash in hand” was not paid on delivery of the deed, and that the debtor remained in possession of and administered the property although he purported to sell it to his daughters, a prima facie case of simulation was made out authorizing a judgment for the creditor where defendants offered no evidence.
See, also, Olivier’s Minor Children v. Olivier, 215 La. 412, 40 So.2d 803, wherein the holding was that the failure to establish the consideration for the sale of realty by a mother to her son renders such transfer voidable.
LSA-C.C. art. 1921 provides:
“In cases, however, of contracts, which purport to transfer the ownership of immovable property, if he who transfers it is suffered by the obligee to remain in corporal possession for a longer time than is reasonably required to deliver the actual possession and to act as owner, to the injury of a third person, who may afterwards contract with him, or acquire rights upon his property as creditor, it will be considered as a mark of fraud, and will throw the burden of proving that the contract was made bona fide upon him to whom the ownership of the property was transferred by the first contract, in any controversy with creditors of the obligor or persons acquiring bona fide intermediate rights by contract with him.”
There is not one iota of evidence, either testimonial or otherwise, which was introduced by the defendants on their behalf to uphold the verity of the transaction under attack. Under the circumstances, the only conclusion that can be reached is that the sale must be set aside as in fraud of the rights of the plaintiff.
LSA-C.C. art. 1970 contains these provisions :
*887 “The law gives to every creditor, when there is no cession of goods, as well as to the representatives of all the creditors where there is any such cession, or other proceedings by which they are collectively represented, an action to annul any contract made in fraud of their rights.”
Therefore, it is ordered that the judgment appealed from is annulled and reversed, and it is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Mrs. Alice Andrews, divorced wife of Marion Lalumia, and against the defendants, Marion Lalu-mia and Marion Lalumia, Jr., in solido, annulling, avoiding and setting aside the pretended sale of the following described property, to-wit:
“One certain lot of ground, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining, situated in the First Ward of the Parish of St. Bernard, State of Louisiana, in Arabi which said lot according to a plan made by P. A. De’Hemecourt, C. E., a true copy of which is made by A. De Armas and deposited in the office of M. T. Ducros, Notary Public for the Parish of Orleans, State of Louisiana, per act dated Dec. 31, 1878, is designated by the No. Twenty (20) 'in Square No. 443, bounded by Morales, (now Marais) Mehle, Urquhart and Angela Streets, and measures thirty feet, ten inches and six lines (3OT0"6'") front on Angela Street, has same width in the rear, by depth on the line dividing it from Lot No. 19 of One Hundred Twenty-seven feet, eleven inches and three lines (127'11"3"').
“Being the same property acquired by Marion W. Lalumia by purchase from Mrs. Sarah Jordano, widow of Manuel Lalumia, et al., per act before Charles A. Danna, Notary Public for the Parish of Orleans, dated April 7, 1934, and registered in COB 39 folio 244.
“One certain lot of ground with all the improvements thereon, rights, ways, privileges, servitudes, and advantages thereunto belonging, or in anywise appertaining, situated in Arabi, in the First Ward of the Parish of St. Bernard, Louisiana, in Square No. 443, bounded by Angela, Morales (now Ma-rais), Mehle and Urquhart Streets, which said lot of ground, according to a plan made by P. A. D’Hemecourt, C. E., a true copy of which made by A. De’Armas, was deposited in the office of M. T. Ducros, late Notary in New Orleans, as per act dated December 31st, 1878, is designated by Number Twenty-one (21) and measures as follows :
“Lot Number Twenty-one (21) measures thirty feet, ten inches and six lines (30T0"6W) front on Angela Street, the same width in the rear, by a depth on the line dividing it from Lot No. Twenty (20) of one hundred and twenty-seven feet, eleven inches and one line (127'lF'l"') and on the line dividing it from Lot Number Twenty-two (22) of one hundred and twenty-seven feet, eleven lines (127TF").
“Being the same property acquired by Marion Lalumia in an Act of Settlement of Community by Mrs. Alice Andrew Lalumia and Marion Lalumia before Allen J. Tillery, Notary Public, on the 2nd day of August, 19SS, and registered in C.O.B. folio ”
made by Marion Lalumia unto Marion La-lumia, Jr., under date of March 3, 1958, before John F. Rowley, Notary Public for the Parish of St. Bernard, registered Conveyance Book 69, folio 316 of said parish, and subjecting the said property to levy under execution on the judgment of plaintiff, Mrs. Alice Andrews, divorced wife of Marion Lalumia, against Marion Lalumia, presently *888 recorded in Mortgage Office Book 56, folio 291, Parish of St. Bernard, to the full extent of the amount due by the judgment debtor on said judgment; all costs herein are to be paid by defendants.
Reversed.
REGAN, J., absent.