69 So.2d 592 (1953)
STATE BOARD OF MEDICAL EXAMINERS
v.
McHENERY et al.
No. 8006.
Court of Appeal of Louisiana, Second Circuit.
December 29, 1953.
Rehearing Denied January 26, 1954.
Writ of Certiorari Denied March 22, 1954.
*593 K. Hundley, I. Ward-Steinman, Alexandria, for appellant.
Gist, Thornton & Murchison, Alexandria, for appellee.
HARDY, Judge.
This is an action by the Louisiana State Board of Medical Examiners under the authority of LSA-R.S. 37:1261 et seq., seeking to enjoin, restrain and prohibit defendant from the practice of medicine in the State of Louisiana until he shall have obtained a certificate or permit required by law, and further praying the assessment of a penalty of $100, together with attorney's fees in the sum of $50. In these proceedings a petition of intervention was filed on behalf of some two hundred individuals, residents of Rapides and other central Louisiana parishes, to which petition plaintiff directed an exception of no right or no cause of action. On behalf of defendant an exception of no right or cause of action and an answer were filed. The exceptions were referred to the merits and after trial there was judgment decreeing the issuance of a permanent injunction as prayed and further judgment assessing a penalty of $50 and an additional like sum as attorney's fees against defendant. The judgment sustained plaintiff's exception of no cause or right of action directed against the intervention and dismissed the same at intervenor's cost. From the judgment both defendant and the intervenors appealed to the Honorable the Supreme Court of the State of Louisiana, which tribunal declined jurisdiction and ordered the appeal transferred to this court, 222 La. 984, 64 So.2d 242.
Proceeding first to a consideration of the right of intervention which was placed at issue by plaintiff's exception, we observe that the petition of intervenors defined their status and interest, in Article 3 of their petition, in the following words:
"That intervenors bring this suit in the public interest as well as in their own behalf, in opposition to the plaintiff Board."
Plaintiff's first ground of opposition to the petition of intervention denies the right of intervenors to take part in the instant litigation on the ground that they have not asserted "a real, bona fide and legal interest in the litigation."
*594 In conjunction with this contention plaintiff asserts that mere moral or personal interest is not sufficient of itself to support a right of intervention, and, further, calls attention to the requirement that an interest justifying a right of intervention must be of such character and nature as would support a separate cause or right of action by said intervenor. In support of these contentions counsel for plaintiff cites Brown v. Saul, 4 Mart.,N.S., 434, Louisiana Code of Practice, Articles 389-392, inclusive; 67 C.J.S., Parties, § 56, page 980 et seq.; American Jurisprudence, Volume 39, page 931 et seq.; New Orleans Land Co. v. Leader Realty Co., 255 U.S. 266, 41 S.Ct. 259, 65 L.Ed. 621.
We concede that the language of Article 390 of the Code of Practice is somewhat indefinite and ambiguous. In its purported definition of an "interest sufficient to warrant intervention" the article reads:
"In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit, or an interest opposed to both."
A literal and liberal interpretation of the above-quoted article would result in an almost unlimited and unrestricted right of intervention and would lead to cumbersome, impractical and absurd results. For example, in proceedings by the proper authority of the State to revoke a liquor license every liquor dealer of the State might qualify as having a general interest sustaining his right to intervene; in an action of disbarment every lawyer might be deemed to have such a general interest as would sustain a right of intervention. The examples are infinite. We think no such result was intended and we believe that the intent and purpose of the nature and character of interest which is necessary is more accurately delineated by the provisions of Article 391 of the Code of Practice which reads as follows:
"One may intervene either before or after issue has been joined in the cause, provided the intervention does not retard the principal suit; the person intervening must be always ready to plead or to exhibit his testimony, because he has always his remedy by a separate action to vindicate his rights." (Emphasis supplied.)
It therefore appears that one of the conditions of an interest justifying an intervention lies in the right of separate and independent action. Certainly in this case the petition of intervention discloses no ground upon which the rights of the numerous intervenors, or any of them, to a separate action against plaintiff, the State Board of Medical Examiners, might be sustained. For these reasons we think the exception to the petition of intervention was properly maintained.
Proceeding to a consideration of the action as between plaintiff and defendant, we first note the strenuous insistence of distinguished counsel for defendant upon the validity of the exception of no cause and no right of action which was referred to the merits and overruled by the district judge. Counsel insists that plaintiff's petition has failed to disclose a cause of action in that it has in effect alleged conclusions rather than facts. Unquestionably the general principle of law supported by authorities cited in counsel's brief is clear on the proposition that a pleader is required to allege facts sufficient to sustain his right to the relief sought. Certainly we do not quarrel with this interpretation of law, but its application depends upon an analysis of the pleading, in which connection we find it necessary to quote the pertinent articles of plaintiff's petition as follows:
"1.
"That Charles K. McHenery, a resident of and domiciled in Rapides Parish, Louisiana, defendant herein, is holding himself out to the public as being engaged in Rapides Parish, Louisiana in the business of diagnosing, treating, curing or relieving bodily or mental diseases and conditions, infirmities, deformities, defects, illness and injury in human beings other than himself, and is examining such persons for *595 such purposes; and is prescribing and administering both external and internal treatment to such persons for such purpose.
"2.
"That the aforesaid acts of the said Charles K. McHenery constitute the practice of medicine as defined by Act 56 of 1914 as amended by Act 54 of 1918 of the General Assembly for the State of Louisiana, [LSA-] R.S. 37:1261-1313.
"3.
"That the said Charles K. McHenery has never obtained the certificate or permit provided for in and under the provisions of the aforesaid acts, and particularly [LSA-] R.S. 37:1270, * * *."
Counsel argues that Article 1 of plaintiff's petition is primarily a verbatim duplication of the statutory definition of the practice of medicine, that the effect of the averment of paragraph 2 is simply to indicate defendant's unlawful practice of medicine, which averments are "merely conclusions of the pleader, no facts being set forth upon which to base the same * * *", contrary to the provisions of the Pleadings and Practice Act, LSA-R.S. 13:3601 et seq., and the established jurisprudence of the state.
It is quite true that Article 1 of plaintiff's petition closely follows the definition of the practice of medicine as set forth in LSA-R.S. 37:1261. However, when plaintiff alleges that the defendant is engaged in the defined acts, the effect is to allege that defendant is practicing medicine. The details as comprehended in the allegation in this instance are, therefore, not conclusions but facts. In other words, the plaintiff, in effect, is saying that the defendant has done and performed certain specified acts. Proceeding with its petition plaintiff avers in Article 2 thereof that the acts described constitute the practice of medicine under the statutes designated. We find nothing objectionable in this article since it merely elaborates the definition of the acts as described in Article 1. Article 3 is a plain, definite allegation that defendant has not obtained the certificate or permit required by law.
Summarizing the three articles recited, it is clear that plaintiff has alleged (1) that defendant has performed certain acts; (2) that the acts performed constitute the practice of medicine, and (3) that defendant has failed to obtain the required certificate or permit for the practice of medicine.
Our appreciation of the allegations discussed fails to indicate that they have done violence to the requirements of ordinary and proper pleading, or that they have prejudiced the defendant in any respect. The argument that these allegations are mere conclusions possesses little merit, for, in our opinion, they constitute facts which, if established, would lead to the conclusion sought. In a broad sense every allegation of pleading is the foundation for a conclusion. We can conceive of no other method or manner of detailing the facts upon which this plaintiff could base its cause of action and seek the relief which is prayed. It is true that plaintiff might have specified times and places in which and circumstances and conditions under which the described acts were performed by defendant, but we know of no authority which makes such specification requisite or essential. It follows that defendant's exception was properly overruled.
On trial on the merits plaintiff called defendant under cross-examination. After answering certain innocuous questions as to name, residence, etc., defendant refused to answer all other questions propounded by counsel for plaintiff on the ground that to answer would tend to incriminate him, a situation with which the general public has of late become keenly cognizant. In each instance the refusal to answer was sustained by the learned judge.
In brief, counsel for plaintiff insistently urges that despite defendant's constitutional right to refuse to answer incriminating questions the fact of such refusal should *596 be construed in itself as a strong circumstance in support of plaintiff's charges. Although this is an argument which appears to have been recently adopted and enforced by members of congressional investigating committees, we, like our brother of the district court, must refuse its recognition and effect.
The statute under which this action is brought establishes violations thereof as criminal offenses and punishable as such, and although the relief here sought is civil in nature, it is closely allied with criminal prosecutions which are provided in the same statute. To deny defendant's constitutional rights or to give his reliance thereupon the implication sought would be the accomplishment by indirection of a result which could not be directly achieved.
An invaluable right firmly imbedded in the history of jurisprudence of Anglo-Saxon peoples is found in the conclusive presumption that an accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt by legal evidence in a fair trial. We point out that this principle is designed and its application is intended to prevent, insofar as is possible to human agencies, the conviction of an innocent person and was not originated, nor has it been perpetuated, for the protection of the guilty. 22 C.J.S., Criminal Law, § 581, pages 893, 895, The relaxation of this principle upon any ground of expediency or even for the assumed purpose of combating ideological dangers will inevitably weaken and finally destroy the right itself.
Failing to procure the desired evidence from defendant plaintiff turned to the examination of several of the intervenors, and, by their testimony, incontrovertibly established the fact that they had been treated by the defendant. These treatments consisted of X-ray examinations and physical manipulation of affected parts of the body. Additionally another witness testified that he had been informed by defendant that he had attended a school for the study of chiropractic over a period of four years.
On the basis of this testimony there can remain no possible question as to the fact that defendant was a practitioner of chirropractic and as such that he came within the statutory definition of the practice of medicine as set forth in LSA-R.S. 37:1261.
Chiropractic has been officially defined by one of its schools as "the philosophy, science, and art of things natural, and a system of adjusting the subluxated vertebrae of the spinal column by hand, for the restoration of health".
We find what we regard as a more comprehensive definition in Maloy's Medical Dictionary for Lawyers, Second Edition, verbo "Chiropractic:"
"A system of adjustment consisting of palpation (feeling with the hands) of the spinal column to ascertain vertebral subluxations (an incomplete or partial dislocation), followed by the adjustment of them by hand, in order to relieve pressure upon nerves at the intervertebral foramina (holes or perforations) so that nerve force may flow freely from the brain to the rest of the body (Palmer)."
Generally accepted definitions of chiropractic, the practice of such a science as constituting the practice of medicine and the right of the State to regulate the same, are matters which have long been settled in Louisiana. Louisiana State Board of Medical Examiners v. Cronk, 157 La. 321, 102 So. 415; Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed 274 U.S. 721, 71 L.Ed. 1324, as well as by the recent case decided by the Supreme Court before it resolved to decline jurisdiction of such matters, Louisiana State Board of Medical Examiners v. Beatty, 220 La. 1, 55 So.2d 761.
The final question presented for determination involves the contention of defendant's counsel that the evidence adduced by plaintiff might be interpreted as establishing the practice of osteopathy rather than that of chiropractic. In this connection counsel urges that the practice of osteopathy is specifically excepted from the *597 application of the statute under which these proceedings were instituted, under the provisions of LSA-R.S. 37:1290. It appears that this argument was first advanced after trial, at which time counsel insisted that both plaintiff's pleadings and proof should have negatived the possibility of defendant's practice of osteopathy under the statutory exception. We commend with unreserved approval and admiration the comprehensive and erudite discussion which was accorded this issue by the district judge in his opinion. While we are not disposed to attach any great degree of importance to the point raised, we nonetheless quote in full the resolution thereof as determined by the trial judge:
"Petitioner claims that respondent is practicing medicine without a license. It does not allege that he is not licensed to practice osteopathy, however, respondent, by his argument, argues that this is an issue involved in the main issue and that petitioner is required to bear the burden of proof on it.
"In order to clearly understand the issue presented it is helpful to refer to Vol. 31 C.J.S. [Evidence, § 103,] p. 708, wherein it is said: `The phrase "burden of proof" as used by the courts, is one of double meaning, which circumstance has been the cause of confusion so great as to suggest the propriety of adepting a less objectionable term. The ambiguity lies in the indiscriminate use of the phrase "burden of proof", as meaning either the necessity of establishing the existence of a certain fact or set of facts by evidence which preponderates to a legally required extent, or the necessity which rests on a party at any particular time during a trial to create a prima facie case in his own favor or to overthrow one when created against him. To avoid confusion, the phrase "burden of proof" will in this article, be confined to the necessity of finally establishing a fact, since that is held to be the primary or more appropriate meaning of the phrase; the other meaning of burden of proof will be represented by the phrase "burden of evidence". Thus, the burden of proof and the burden of evidence are not the same thing; the burden of evidence may be defined as the burden of making or meeting a prima facie showing as to an issue.'
"This is followed by the well known rule that the burden of proof as to a fact or issue generally rests on the party asserting or pleading it, or having the affirmative of the issue, and remains on that party throughout the trial.
"At page 716, [§ 105] following, it is said: `Whenever the establishment of an affirmative case requires proof of a material negative allegation, such as that the case does not come within an exception provided for, the party who makes such allegation has the burden of proving it, except, according to some authorities, where the facts are peculiarly within the adverse party's knowledge; but the asserted exception as to negative allegations peculiarly within the adverse party's knowledge is said to relate to the burden of evidence and does not affect the burden of proof properly so called. A party is not required to prove negative allegations which are merely necessary as pleadings but constitute no part of his case.'
"At page 721, [§ 113] following, it is said: `In the administration of justice it is desirable that the burden of producing evidence be placed on the party best able to sustain it, and there is authority for the view that the burden of evidence as to an issue rests on the party having the greater means of knowledge. A narrower formulation is that where the evidence as to an issue is peculiarly within the knowledge or control of a party, the burden of evidence as to such issue rests on him. It is very generally held that, where a party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called on to negative, *598 or has peculiar knowledge or control of evidence as to such matters, the burden rests on him to produce the evidence, the negative averment being taken as true unless disproved by the party having such knowledge or control. The party on whom the burden is put by his peculiar knowledge or control is obliged to go no further than necessity requires.
"`However, mere difficulty or inconvenience in discharging a burden of making proof does not displace it; and as a matter of principle the difficulty only relieves the party having the burden of evidence from the necessity of creating positive conviction entirely by his own evidence, so that, when he produces such evidence as it is in his power to produce, its probative effect is enhanced by the silence of his opponent.
"`The court will more readily hold that a party has sustained the burden of evidence where the issue is one as to which the evidence is peculiarly within the adverse party's knowledge or control.'
"In `Jones on Evidence', Third Edition, at page 245, we find: `On principles already discussed the burden of proof as to any particular fact rests upon the party asserting such fact. The burden of bringing forward evidence may during the course of the trial be shifted from one side to the other; and where the fact is one peculiarly within the knowledge of one of the parties slight evidence may suffice for that purpose. Many illustrations in this chapter clearly show that where the facts lie solely within the knowledge of one party, this is an important consideration in determining the amount of evidence necessary to be produced by the other party.'
"This is often illustrated in prosecutions for doing certain acts without the license required by law. By a few authorities the rule is prescribed that in such cases the prosecution must offer some slight proof of the fact that no license has been granted, for example, by producing the book in which licenses are recorded; and if the book fails to show that a license has been granted, the burden is upon the defendant to prove the fact claimed by him. But the greater number of authorities hold that where a license would be a complete defense, the burden is upon the defendant to prove the fact so clearly within his own knowledge.
"The Court's research has revealed numerous cases in our own jurisprudence whose holdings are in consonance with the above quoted principles of law.
"In Lovell v. Payne, 30 La.Ann. 511, plaintiff brought a revocatory action alleging fraud, insolvency, and want of consideration. Defendant's answer denied the fraud and insolvency and averred a valid and valuable consideration.
"Speaking of the testimony of one of the defendants the Court said: `This is the only evidence going to show any consideration for the transfer attacked, notwithstanding that was directly put in issue. The burden of proof was upon the defendants to prove facts peculiarly within their knowledge * * *'.
"In Nunez v. Bayhi, 52 La.Ann. 1719, [28 So. 349,] a petitory action was brought for the recovery of property which plaintiff claimed to have purchased from defendant's deceased father. Defendant answered that the deed relied upon was obtained by fraud and without consideration.
"After reciting the circumstances surrounding the transaction, principally the condition of the grantor at the time the alleged sale was made, the Court concluded in these words: `These circumstances, without regard to others disclosed in the record before us, present a concrete case, to which the abstract proposition that a mere *599 charge of fraud does not throw the burden of proof on him against whom it is made has no application; for the facts which are shown throw a grave doubt upon the reality and good faith of the transaction, and the burden of proof is shifted to the parties who know the truth and can establish it by their testimony, and when they fail to furnish evidence clearly within their power all the presumptions of law are against them.'
"In Jackson v. Brewster, [La.App.,] 169 So. 166, two heirs of the decedent brought suit to set aside a judgment and sheriff's sale had under an attachment against the plaintiffs as heirs of decedent, the action being based on the claim that they had not accepted the succession.
"We quote from the opinion in referring to this averment of plaintiffs: `In the answer a specific denial of this allegation is made, thus creating the issue of whether or not an acceptance of the succession had occurred. Although it is to be seen that the above quoted allegation is negative in character, nevertheless the fact alleged on is material to plaintiff's cause of action and the burden of proving it is with them. The general rule seems to be that the party whose contention requires proof of a negative fact has the burden of evidence to prove that fact. 22 Corpus Juris, p. 80. An exception to this rule is where the matter is peculiarly within the knowledge of the adverse parties. 22 Corpus Juris, p. 81. It is obvious that this case does not fall within the exception to the rule, for certainly these plaintiffs possessed more knowledge about the matter than did the opposing parties. As the record does not contain a particle of evidence tending to establish that the plaintiffs had not accepted the succession, we must hold that the attack, with reference to this ground cannot prevail.'
"In State ex rel. Leary v. Hughes, [La.App.,] 185 So. 69, the question presented was whether a judgment had been satisfied by an execution sale or whether only a credit thereon had been effected.
"The Court said: `And where, as in the present case, a strong prima facie case of extinguishment has been made out by presumptive or circumstantial evidence of the character herein discussed, the duty then devolves upon the judgment creditor to adduce proof sufficient in probative value to overcome such prima facie case. And if the judgment creditor fails to adduce such proof, presumptively in its or his possession, such failure will be weighed heavily against the creditor, and the inference will arise therefrom that evidence bearing upon the question of payment of which they are presumed to have knowledge or possession, if introduced, would be unfavorable to the contention of non-payment.'
"The following quotation is taken from Wallace v. Shreveport Railways Co., [La.App.,] 175 So. 86: `Although it has sometime been stated that the burden of proof will shift to defendant on plaintiff making out a prima facie case, this statement is inaccurate, and, where defendant sets up a plea or answer denying its liability, the main burden of proof does not shift, but is on plaintiff throughout the case, even where a presumption of negligence exists, although where plaintiff introduces evidence sufficient to make out a prima facie case, it is then incumbent on defendant in order to prevent a recovery to introduce evidence sufficient to overcome such showing by plaintiff * *'.
"See also First National Bank of Ruston v. Jones, [186 La. 269,] 172 So. 155; Collins v. Magee, [15 La.App. 66,] 130 So. 267, and Succession of Delachaise v. Maginnis, 44 La.Ann. 1043, [11 So. 715.]
"Other helpful authorities are: Wigmore on Evidence, pgs. 274, et seq. *600 Third Edition, and Spilene v. Salmon Falls Mfg. Co., [79 N.H. 326,] 108 A. 808, from the Supreme Court of New Hampshire.
"Reverting to the case at bar, it is the opinion of this Court that petitioner fully and completely stated a cause of action in alleging performance by respondent without a license, of acts constituting the practice of medicine, there being no necessity to allege that respondent did not come within an exemption provided in the Medical Practice Act for the reason that the acts complained of were not restricted to any practice exempted from the operation of the Act. Respondent argues that since the evidence against him showed a practice exempted from the Act if `licensed', the issue of whether he is `licensed' to engage in it is an issue within the main issue to be proved by petitioner.
"Petitioner, bearing the burden of proof, established a prima facie case of respondent practicing medicine, whether it be called chiropractic or osteopathy, by the testimony of Miss Beaubouef and the witnesses McKenzie and Carpenter. At this point the burden of the evidence shifted to respondent to show that he is a `licensed osteopath'. The burden was never upon petitioner to prove that respondent is not so licensed because that fact is one within his peculiar knowledge. As respondent has failed to meet the prima facie case made out against him judgment, of necessity, must go for petitioner."
We approve and adopt the above and foregoing reasons, though we would have been inclined to more summary disposition of the question on the ground that there was no more requirement on the part of plaintiff to negative in its pleading the exception accorded osteopaths than there would have been to negative the other eight specified exemptions. Further, as a purely practical proposition, we think it is obvious that if defendant was entitled to immunity by reason of exemption under the statute he would himself have plead and proved such fact without the necessity for a resort to hair-splitting technicality.
For the reasons assigned the judgment from which appealed is affirmed at appellant's cost.