AYRES, Judge.
The Louisiana State Board of Medical Examiners charged the defendant with practicing medicine without having first obtained a license or permit to do so, as required by *482 the Medical Practice Act, LSA-R.S. 37 1261 et seq. Defendant was particularly charged with such practice by holding herself (out) to the public as being engaged in the business of diagnosing, treating, curing or relieving bodily or mental diseases, conditions, infirmities, deformities, defects, ailments, and injuries in human beings other than herself and by examining such persons for such purposes, and by prescribing, administering, both internal and external, treatments to such persons for such purpose. Plaintiff prayed for the issuance of a preliminary injunction after trial of a rule therefor and prayed for judgment for penalties and attorney’s fees .as prescribed by said Act, and that finally a permanent injunction issue enjoining defendant from practicing medicine without first having been authorized by proper license.
Defendant first filed a motion to elect, a plea of vagueness and an exception of no cause or right of action, which were overruled, and then by answer denied that she was holding herself out to the public as engaged in the practice of medicine or surgery in any of its branches or that she is engaged in such practice. Further answering, she alleged she is engaged in the occupation of renting movable property known as the Edwards Myo-Flex machine, and, in the alternative, plead the uncon-stituti.onality of the Medical Practice Act.
After trial of the rule therefor, a preliminary injunction was issued and thereafter, after trial on the merits, defendant was held to be practicing medicine without a license and, accordingly, the injunction was made permanent and judgment was rendered in favor of plaintiff for $100 penalty and $50 attorney’s fees, and costs, as provided for by Sec. 1286 of the aforesaid statute. From the judgment thus rendered and signed, defendant appealed to this court.
 The motion, pleas- and exceptions were properly overruled. We find no merit in the contentions therein made. A similar exception of no cause or right of action was overruled by this court in Louisiana State Board of Medical Examiners v. Mc-Henery, 69 So.2d 592, and the constitutionality of the statute has been upheld by this court and other Courts of Appeal of this State, the Supreme Court of Louisiana, and the United States Supreme Court. This is so well known that citation of authorities appears unnecessary.
The motion to elect is leveled at the fact that the petition, in charging defendant with doing of a series of specific acts, charged some of them in the disjunctive rather than the conjunctive. The meaning, however, was clear and defendant was not misled. The pleading appears to be highly technical and without merit in this particular instance. As recited hereinabove, defendant was charged specifically and in detail with certain acts which were alleged to constitute the practice of medicine as defined by the statute. Here again the petition appears sufficiently specific and full of details so as to fully inform and not mislead defendant of the charges with which she is confronted and sufficient for her to answer and make her defense.
The trial court found from the evidence that defendant was not practicing medicine in the manner of diagnosing, examining or prescribing drugs, et cetera, but found that she was holding herself out to • the public as engaged in the business of doing those things which the Act forbids' other than by a licensed' physician. This finding was based upon the fact that defendant owns and either uses or rents at her residence an Edwards Myo-Flex electric or electronic massage or vibrating machine. M. J. Edwards, a resident of Shreveport, Louisiana, who designed, developed and manufactured this machine and sold it to the defendant, was called as a witness by plaintiff, who stated that this machine was made purely for massage use and could not be used for any other purpose, and that it was not a clinical machine or intended as such. It developed, too, that Edwards manufactured and sold another machine to defendant which originally was designed as a clinical machine, but defendant intended in purchasing it to donate it to the local Shrine Hospital, which, however, was declined because approval of its use had not been op- *483 tained from the American Medical Association, whereupon the sections making it a clinical machine and distinguishing it from a massage machine were disconnected. Therefore, in its present condition, it is like the first machine, purely a massage machine.
The plaintiff is charged with the burden of establishing its case by a preponderance of the evidence. The evidence in this case clearly shows that the defendant owned a massage machine; that it was capable of massaging by a vibrating process and doing nothing else. Whether the operation of the machine was by the defendant personally or through her agent or that she rented the machine, as she contended, and either personally or through an assistant, assisted in the use of the machine by the person seeking its use, is a matter of no serious importance. The effect is the same. If defendant, by the use of, this machine, is engaged in practicing medicine or holding herself out as doing so, such use or system of operation would not be affected under the circumstances established by the evidence under the guise of renting the machine. The record is barren of testimony showing that defendant examined any person or did any of the specific acts charged to her for the purpose of diagnosing, treating, curing or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment or injury or that she ever prescribed or administered any treatment to any person for any such purpose, or that she ever diagnosed, treated, cured or relieved any bodily or mental disease whatsoever or held herself out as being able to do so. •
In support of its allegations, plaintiff offered the testimony of eight witnesses, including that of defendant under cross examination, and defendant tendered fourteen witnesses in her defense, and as to whom it was stipulated that they would testify substantially as plaintiff’s witnesses except as to Mrs. O. W. J. Reynolds, the wife of the investigator who investigated this matter. An extract from the testimony of O. W. J. Reynolds, a witness produced on behalf of the plaintiff, who was the investigator for the Corporation Investigation Service, which investigated this matter, is a fair sample .of the testimony of all of these witnesses. Reynolds testified not with reference to his investigation but concerning his personal visits to defendant’s home. In response to a question by the plaintiff’s counsel, this witness testified as follows:
“Q. What type of treatment did you receive out at the Clinic? A. Massages.”
In response to questioning on cross-examination, this witness testified as follows:
“Q. Mr. Reynolds, I want to ask you a few questions. Did Mrs. Beaird diagnose anything for you? A. No sir.
“Q. Did she treat anything for you ? A. No sir.
“Q. Did she promise to cúre anything for you? A; No sir.
“Q. Were you promised any curative effects whatsoever. A. I did not ask for it at all, no sir.
“Q. Were, you promised any relief by Mrs. Beaird? A. No sir.
“Q. Did she say anything to you about what kind, if any, of bodily disease you had? A. No sir. ■ -
“Q. Did your doctor diagnose your case ? A. Many of them have, yes sir.
“Q. Were you treated, promised, or any other way, for any mental condition, bodily disease, infirmity, deformity, defect, ailment or injury by Mrs. Beaird? A. No sir.
“Q. Did she prescribe any internal or external remedies? A. No sir.
“Q. Or medicines? A. No sir.
“Q. Did she use any force on you whatsoever? A. No sir.

“Q. Is that all it does, just flex the muscles? A. Yes sir.
*484 “Q. Just like if you flexed them with your hands and fingers, it kind of rubs up the muscles? A. I would think it would be more effective, yes sir.
“Q. I mean, it is the same thing, it might go deeper but it would be the same principle as if I flexed your muscles with my hand, is that correct, a massage? A. Yes sir.
* * * * * *
“Q. Well, subject to my objection, when you say you heard about this place, did whatever you heard have anything to do with Mrs. Beaird holding herself out as a doctor? A. No sir.
“Q. Did you hear anything that had to do with holding herself out for the absolute unconditional cure or remedy or anything? A. No sir, I didn’t.
“Q. Did you hear that she was practicing medicine in any shape, form or fashion? A. No sir.
“Q. Did you receive any kind of an examination whatsoever of any type, any fashion or form from Mrs. Beaird? A. No sir.
“Q. Or from anybody else ? A. No sir.
* * * * * *
“Q. Were you given the privilege or the right to use it as long or as short as you pleased? A. Yes sir; there was no set time. My understanding was until you get some relief if it was possible.
“Q. Well, whether you got any relief or not, it was for you to decide and no one else would know that? A. That’s right.
“Q. No relief was promised you? A. No sir.
“Q. Or suggested to you? A. No sir.”
To the same effect is the testimony of Charley Rinaudo, who operates the Mirror Steak House in Shreveport, who testified for plaintiff that Mrs. Beaird did not make any diagnosis of his condition, did not give him any treatment herself, did not promise him any cure or any relief, did not hold herself out as practicing medicine, did not promise him anything in the way of treatment and relief or prescribe any medicine or drugs of any kind; that the machine was the same as a vibrator that barbers use in barber shops, and that the only reaction experienced was a vibrating feeling, the same as when a barber uses a vibrating machine. He merely got a massage. Similar testimony was given by other witnesses, all of them describing the operation as a massage or a flexing of the muscles of the body as if they had been flexed by the rubbing of the hands or fingers, and that the machine produced a vibrating effect, such as machines used in barber shops and beauty parlors, although perhaps a little larger or a little stronger.
We conclude from this evidence that defendant was neither holding herself out as practicing medicine nor as engaged in such practice as charged by plaintiff but merely in giving massages. The trial court placed much emphasis upon the fact that it appeared from the number of witnesses and the attendance of the trial in court that defendant’s clientelle was rather large and that each of the parties receiving a massage went there for a specific purpose or for a definite reason or to relieve some condition of their physical bodies. There is always a reason for massages, rub downs, et cetera. This is practiced by masseurs and in barber shops and beauty parlors, and by athletes following training or severe exercise. That these parties had definite reasons for desiring a massage is of no material importance and makes no difference.
This court, in Louisiana State Board of Medical Examiners v. Martindale, La.App., 83 So.2d 544, held that one engaging in the business of massaging is not engaged in the practice of medicine. The reasons stated therein are equally applicable here. The only distinction is that the massaging in the cited case was done manually, where *485 as in the instant case it is by machine, a distinction without any practical difference.
Notwithstanding our reluctance to disagree with the trial court in its finding of fact, we feel impelled to do so in this case as to our minds plaintiff has failed to carry its burden of proof. Quite to the contrary, it abundantly appears that defendant was not guilty of the charge.
For the reasons herein assigned, the judgment appealed is annulled, avoided, reversed and set aside and, accordingly, there is now judgment rescinding and setting aside the injunction issued and rejecting plaintiff’s demands and dismissing its suit and assessing it with the stenographer’s costs.
Reversed and rendered.