ELLIS, Judge.
Plaintiff filed this suit in which it sought to enjoin the defendant from the alleged practice of medicine as defined by LSA-R.S. of 1950, Title 37, Section 1261. Judg *299 ment was rendered in favor of the defendant dismissing plaintiff’s suit from which an appeal was perfected to this court.
The learned judge of the District Court has favored us with an exhaustive and interesting opinion covering the law, a discussion of practically all prior jurisprudence and the facts, with which we are in complete accord and, therefore, adopt his reasons for judgment. We will discuss, after quoting the lower court’s reasons, the objection and criticism to these reasons as set forth in the brief of the plaintiff.
“Alleging that defendant is holding himself out to the public as being engaged in the business of diagnosing, treating, curing or relieving bodily or mental diseases, conditions, infirmities, deformities, defects, ailments and injuries in human beings other than himself, and is examining such persons for such purpose and is prescribing and administering external treatment to such persons for such purpose, which acts, it alleges, constitute the practice of medicine as defined by [LSAjR.S. 37:1261, plaintiff seeks injunctive relief, under [LSAjR.S. 37:1286, prohibiting such acts on the part of defendant, and the recovery of $100 penalty and $50 attorney’s fees, provided by the same Section.
"The rule nisi was issued April 19, 1956, and made returnable on June 4, 1956.
“Defendant answered the petition on May 8, 1956. Other than admitting the authority of plaintiff to bring the suit and that defendant has obtained no certificate or permit to practice medicine, as required by [LSAjR.S. 37:1270, the answer generally denied the material allegations of plaintiff’s petition.
“When the trial of the rule nisi was called for hearing on June 4, 1956, it was stipulated that the answer filed be considered both as an answer to the rule and to the merits and that the trial be had both on the rule and the merits, so that if an injunction should be issued, it be in the form of a permanent one.
“The case was submitted without argument or the filing of briefs, but from the evidence adduced by the respective sides it seems clear that while plaintiff contends that the labors performed by defendant were those of a chiropractor, hence, under the jurisprudence they constitute the practice of medicine, as the term is defined by' [LSAjR.S. 37:1261, defendant contends; that he does not practice chiropractic and does not hold himself out to the public as-being engaged in the business of diagnosing,, etc., the other things which the petition alleges he was doing, his labor consisting solely of those of a masseur, such as the Court of Appeal, Second Circuit, in [Louisiana] State Board of Medical Examiners v. Martindale, 83 So.2d 544, held not to be subject to the Medical Practice Act.
“The Court is aware that it is usually considered to be the best form, in writing legal opinions, to first relate the facts upon which the opinion Í9 based, and then to apply the applicable law to those facts, but in this particular case, because the evidence of both sides is so obviously directed toward attempting to bring the case under a particular interpretation of the law, it seems more logical to first discuss the law, The Medical Practice Act, as now embraced in Title 37, Sections 1261 et seq. of the 1950 [LSA] Revised Statutes, and the jurisprudence insofar as it concerns the issues involved in this case.
“Section 12 of Article VI of the present Constitution [LSA] directs the Legislature to provide for the protection of the people from unqualified practitioners of medicine. Similar provisions are to be found in the Constitutions of 1879, 1898 and 1913.
“The State has had many different Acts dealing with the practice of medicine, Act 320 of 1855, Sections 66 and 67 of the Revised Statutes of 1856, Act 114 of 1869, Sections 2677-2685 of the Revised Statutes of 1870, Act 31 of 1882, Act 55 of 1886, Act 49 of 1894, Act 244 of 1908, Act 16 of 1912, Act 56 of 1914.
*300 “Pursuant to the constitutional mandates subsequent Legislatures passed various Medical Practice Acts, namely: Act 31 of 1882, Act SS of 1886; Act 49 of 1894; Act 244 of 1908; Act 16 of 1912; Act 56 of 1914, and Act 54 of 1918, the latter two being the source of the present law, which is now Title 37, Sections 1261 et seq. of the 1950 [LSA] Revised Statutes. Even prior to the constitution of 1879, the Legislature had passed a number of Acts on the subject, see Act 320 of 1855 (Sections 66 and 67 of the Revised Statutes of 1856), Act 114 of 1869 (Sections 2677-2685 of the Revised Statutes of 1870).
“I;n a study of the question of what acts constitute the ‘practice of medicine’, as that term is defined by the present law, [LSA] R.S. 37:1261, as taken from Section 9 of Act 54 of 1918, it is important to note the difference between the definition of that term, as contained in the present Statute, and that as contained in Section 13 of Act 56 of 1914.
“Section 13 of Act 56 of 1914 reads as follows:
“ ‘Any person shall be regarded as practicing medicine within the meaning of this Act who shall append the letters M.D. or M.B. to his or her name, or shall prescribe, direct, or apply, or shall profess or publicly advertise that he prescribes, directs or applies for the alleged purpose of treating, curing or relieving any bodily or mental disease, infirmity, deformity, defect, ailment, or injury in any person other than himself, any drug, instrument, or force, whether physical or physic, or of whatever nature, or any other agency or means, or who shall examine any such ,'person for such purposes; whether such drugs, instrument, force or other agency or "means is to be applied or used by the patient or..by any other person ; and whether such prescribing, directing, or applying, be for compensation of any kind or be gratuitous; and any officer of agent, or employee or member of any corporation association or partnership which does or professes or publicly advertises that it does examine for, cure, treat, or relieve such diseases, ailment, deformities, defects, injuries or infirmities, in any of the modes mentioned in this section shall be regarded as practicing medicine under the provisions of this Act.’
“Section 1261 of Title 37 of the 1950 [LSA] Revised Statutes, taken from Section 9 of Act 54 of 1918, reads as follows:
“ ‘As used in this Part, “the practice of medicine, surgery, or midwifery” means the holding out of one’s self to the public as being engaged in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being other than himself whether by the use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied or used by the patient or by another person; or the attending of a woman in childbirth without the aid of a licensed physician, surgeon or midwife; or the using of any other title other than optician, to indicate that he is engaged in the business of refracting . or fitting glasses to the human eye.’
“Comparison of the two definitions, as contained in the Statutes above quoted, renders it obvious that, whereas, under the former Statute, Section 13 of Act 56 of 1914, the acts constituting the practice of medicine could be both, the holding one’s self out as treating, curing, etc., and the actual treating, etc., under the definition contained in the present law, [LSA] R.S. 37:1261 et seq., the actual diagnosing, treating, etc., are not the acts that constitute the practice of medicine, but it is ‘the hold *301 ing one’s self out to the public as being engaged in the business of diagnosing, treating/ etc., that constitutes that practice.
“Section 1289 of Title 37 provides criminal penalties for the violation of the Medical Practice Act. Could one be convicted, under that Statute ‘diagnosing, treating’, etc. ? No, because the crime is not diagnosing, treating, etc., without having first obtained a permit, it is ‘holding out one’s self to the public as being engaged in the the business of diagnosing, treating, etc.,
“Under the gambling Article, 90 of the Criminal Code [LSA-R.S. 14:90], the crime is the ‘conducting * * * as a business, of any game’. It is not the act of gambling. That article does not prohibit gambling of the individual. It prohibits the conducting of the game as a business. Gandolfo v. Louisiana State Racing Commission, 227 La. 45, 78 So.2d 504. Nor does the Medical Practice Act prohibit, as the practice of medicine, without a permit, the diagnosis, treatment, etc., of diseases and ailments. The prohibition therein contained is against the ‘holding out of one’s self to the public as being engaged in the business of diagnosing * * * ’ etc.
“The manifest and drastic change made by Act 54 of 1918 ([LSA]R.S. 37:1261) in the definition of ‘practice of medicine’, as defined in Act 56 of 1914, was, it seems to me a much needed and necessary one, for, under the 1914 Act a person would have been guilty of practicing medicine who, gratuitously, suggested to another that he take an aspirin pill to relieve the headache. Suffice it to say that, since the passage of the 1918 Act in order for one to be said to be practicing medicine, he must ‘hold out himself to the public as being engaged in the business of diagnosing, treating’ etc., the ‘diagnosing’ or ‘treating’, in themselves, not constituting acts within the definition of the term of ‘practice of medicine’.
“I have carefully reviewed all of the Louisiana cases I could find that pertain to the practice of chiropractics, and the labors performed by chiropractors, as being in violation of the Medical Practice Act. In each of these cases the Louisiana State Board of Medical Examiners was the plaintiff, and the following named, the defendants, respectively: Cronk, 157 La. 321, 102 So. 415; Fife, 162 La. 681, 111 So. 58 [54 A.L.R. 594]; Beatty, 220 La. 1, 55 So.2d 761; McHenery, 222 La. 984, 64 So.2d 242, transferred to Court of Appeal, Second Circuit and decided by that Court, 69 So.2d 592; Tackett [La.App.], 71 So.2d 137; Booth [La.App.], 76 So.2d 15; Fisher [La.App.], 76 So.2d 56; Weller [La.App.], 77 So.2d 166; Barber [La.App.], 78 So.2d 60; Martindale [La.App.], 83 So.2d 544; Adams [La.App.], 84 So.2d 282; Karas [La.App.], 85 So.2d 354; Wimberly [La.App.], 85 So. 2d 679, and Mooring [La.App.], 86 So.2d 641.
“In most of these cases the defendant admittedly either was a chiropractor, or he was found to be performing' the labors which the Court, in the first case, Cronk case, found to be performed by those engaged in chiropractics and holding himself out to the public as such. However, it is well to note that, although the Cronk case was decided in 1924, it makes no mention of the 1918 Act, but quotes the definition as given in Section 13 of Act 56 of 1914, and pointed out that under that Section, the mere direction or application of physical force for the treating, etc., is made an offense, whereas, as we have seen from the definition contained in [LSA]R.S. 37:1261, the offense is ‘the holding out of one’s self to the public as being engaged in the business of diagnosing, treating * * * or the examining of any person * * * or material from any person for such purpose’.
“The Court, in the Cronk case, defined ‘Chiropractic’ as follows:
“ ‘Chiropractic’ is defined in the cata-logue of the Palmer School of Chiropractic as ‘the philosophy, science and art of things natural, and a system of adjusting the subluxated vertabrae of the spinal column, by hand, for the res *302 toration of health.’ The dean of the faculty of the Palmer School of Chiropractic testified on the trial of this case as follows:
“ ‘The theory of chiropractic is that the subluxation produces pressure upon nerves which produce abnormal conditions on the tissues of the body; and by the adjustment of this subluxation the pressure is relieved, normal impulses are allowed to flow through these nerves, and the natural forces of the body do the rest’.
“The defendant in the Cronk case defined ‘subluxation’ as ‘a slight displacement of a vertebra’, while Webster’s New International Dictionary defines it as ‘incomplete dislocation, as of one of the bones in a joint’.
“The opinion in that case begins with the statement that ‘defendant is a chiropractor’. That fact, apparently, was not disputed or in contest. The evidence in the case, insofar as the opinion discloses it, showed that defendant used no drugs, his practice consisting solely in adjusting the subluxated vertebrae of the spine with both hands, the application of the hands.being neither in the nature of rubbing nor pressing, but consisting of a thrusting movement. Defendant admitted that the purpose of such treatment was to bring about a correction of the sub-luxation of the vertebrae, and thereby to produce a normal functioning of the organs of the body and improvement of the health of the patient. He also admitted that he had treated patients for liver, kidney and stomach complaints, and other bodily ailments. A number of patients testified that they had been cured by him. On the showing made, the Court held that defendant was engaged in the practice of medicine and granted injunctive relief against him.
“Certainly, as the Court held, considering the definition of the practice of medicine as contained in the 1914 Act the defendant was guilty of violating that Act.
“The Cronk case was followed, in 1927, by the Fife case, which, perhaps is the best known of the chiropractor cases and the one most often cited. It, however, is not of much help to us in deciding the present case, since in it, defendants were, without question, practicing chiropractic and holding themselves out to the public as being engaged in the business of chiropractics and in diagnosing, treating, curing, etc.
“It seems that, the Fife case having so completely decided all questions that could arise in these chiropractic cases, litigation on the subject then ceased for a number of years, or until 1951, when the Beatty case reached the Supreme Court and was decided. The Beatty case is of no help in this case, since the defense urged in that case was that by the passage of Act 91 of 1932' [LSA-R.S. 37:1111] defining the practice of osteopathy, the definition of the practice of medicine, as contained in the Act of 1918, had been so modified as to exempt from its provisions the acts which defendants were performing, which were those of a chiropractor. The opinion shows that defendants were practicing chiropractics and ‘hold themselves out to the public as being skilled in the science of healing the sick * *
“The McHenery case was, 222 La. 984, 64 So.2d 242, by the Supreme Court, transferred to the Court of Appeal, Second Circuit, and decided by that Court, in 69 So.2d 592. In that case, the question of whether the defendant was holding himself out to the public as being engaged in the business of diagnosing, treating, etc., was not presented to or decided by the Court. It held that the evidence showed that he was engaged in the practice of chiropractic and as such he was violating the Medical Practice Act. The Court adopted the definition of chiropractic as contained in Maloy’s Medical Dictionary as follows:
“ ‘A system of adjustment consisting of palpation (feeling with the hands) of the spinal column to ascertain vertebral subluxations (an incomplete or partial dislocation), followed by the ad *303 justment of them by hand, in order to relieve pressure upon nerves at the in-tervertebral foramina (holes or perforations) so that nerve force may flow freely from the brain to the rest of the body (Palmer)’.
“The Evidence in the McHenery case showed defendant used x-ray examinations, physical manipulations of the affected parts of the body, had informed patients he had attended a school of chiropractic for four years. The Court pointed out that under the Cronk and Fife cases, the practice of chiropractic constituted the practice of medicine.
“The opinion in the Tackett case does not disclose what the facts of the case were, the case having been decided on legal questions principally involved in the McHenery case.
“The defendant in the Booth case also was a chiropractor, engaged in chiropractic. The opinion says that ‘According to the record in this case, at his office, as a chiropractor, he rendered services’, etc. The case, apparently, was defended on the principal ground of unconstitutionality of the Act, former jeopardy, and the question of whether defendant was holding himself out to the public as being engaged in the business, etc., does not seem to have been considered or passed upon. The evidence showed that defendant treated patients for ulcers, arthritis, disability to spine and back and injured shoulder, all by applying pressure to the back or spine and manipulating the muscles and popping the neck.
“In the Fisher case it was stipulated that the defendant was ‘holding himself out to the public as being engaged in the practice of chiropractic’ and for such purpose received and treats patients, etc. Unquestionably he came under the definition as contained in the Act.
“The opinion in the Weller case (La.App., 77 So.2d 166) does not set out what the facts were, the case being decided on points of law. However, it does show that the petition alleged that defendant was holding himself out to the public as being engaged in the business of diagnosing, treating, etc.
“The opinion in the Barber case shows none of the facts, other than that defendant ‘was engaged in the practice of chiropractic in violation of the law’.
“In the Martindale case, the only one in which a defendant has been successful, the defense was based on the ground that the defendant was a masseur and that the labors performed by him were only such as are performed by such artists. He testified that he, although he was a licensed chiropractor under the laws of the State of Texas, has conscientiously refrained from exercising such practice in Louisiana, and has confined himself to the business of a masseur. He testified his treatments consisted solely in placing his patients upon a special type of table and administering a massage in which he may use a small vibrator affixed to his hand. The eight witnesses called by plaintiff in rule testified plaintiff informed them that he would not give them chiropractic treatments, diagnose their complaints or prescribe for bodily ills or infirmities. The Court said that:
“ ‘All that can be gleaned from the evidence is that the defendant placed the customer upon a table and administered a massage during which administration he employed a hand electric vibrator.’
“The Court defined ‘Massage’ as defined in Webster’s 20th Century Dictionary as a ‘system of remedial treatment consisting of kneading or rubbing the body’, and said:
“ ‘The Courts which have passed upon the question have consistently held a masseur does not violate a statute requiring a license or certificate to practice medicine when he confines himself to the particular sphere of labor of a masseur; but the rule is otherwise where he undertakes to treat diseases for pay and in doing so uses means not *304 customarily used by a masseur in his particular sphere of labor. See 70 C.J.S., Physicians and Surgeons, § 10, Subd. (4), p. 838/
“Judge Gladney, as the Court’s spokesman in the Martindale case, further said:
“ ‘The practice of medicine is a pursuit very generally known and understood. It is understood to mean the diagnosis and application and use of medicines and drugs for curing, mitigating or relieving bodily diseases or conditions. The practice of massage in common understanding, refers to a method of treatment of the superficial parts of the body by rubbing, kneading, etc., usually with the hand as an instrument.’
“In the Adams case it was stipulated that defendant was holding himself out to the public as being engaged in the business of chiropractic .and for such purpose, receives, diagnoses, treats patients by manipulation of the spine, of the vertebrae of the spinal column and of the nerve centers of the body, and that he was a graduate chiropractor. This case was defended on the ground that the things which defendant did were those of an osteopath, and therefore excepted from the Medical Practice Act by Act 91 of 1932, but the Court holding that defendant was not a licensed osteopath and, therefore, was in violation of the Medical Practice Act.
“The Karas case is authority only for the law that the President of the Plaintiff Board must be specifically authorized to bring a suit.
“In the Wimberly case, defendant had been convicted of illegally practicing medicine. He maintained a sign on his office showing it to be a ‘chiropractic clinic’. Whether he was otherwise holding himself out as being in the business of diagnosing, treating, etc., was not shown in the opinion. The case was decided on the showing that he was practicing chiropractic, which the Courts, in the Booth and Fisher cases, had held to constitute the practice of medicine.
“In the Mooring case the record established that the defendant was engaged in the practice of chiropractic, which the Court said had long been conclusively pronounced to constitute the practice of medicine, citing the McHenery case. The facts are not otherwise shown.
“In none of the cases reviewed, except, perhaps, the Cronk case, can it be said that the question whether one may be said to be practicing medicine, by the act of diagnosing, treating-, etc., as distinguished from the Act of holding out one’s self to the public as being engaged in the business of, etc., presented or passed upon. As has been seen the 1914 Act was applied to the facts of the Cronk case, and that Act contrary to the present law, did provide that the diagnosing, treating, etc., of patients constituted the practice of medicine. It is true that in a number of the cases reviewed, it was held that the mere fact of practicing as a chiropractor constituted a violation of the Medical Practice Act, but in neither of such cases was the question of whether defendant had been holding out himself to the public as being engaged in the business of diagnosing, etc., squarely presented and passed upon.
“As the Court views the Statutes and jurisprudence hereinabove analyzed, in order for it to grant the relief plaintiff seeks, it must find, from the evidence, either (1) that defendant was holding himself out to the public .as being engaged in the business of diagnosing, treating patients, or (2) that he was practicing chiropractic.
“We now pass to a consideration of what the facts are:
“Plaintiff called defendant on cross examination and three other witnesses, the three being hired for the purpose of investigating defendant’s activities. These were Messrs. James Culbertson, Horace Lyons and L. D. Whitesell. Culbertson visited defendant’s place on January 26, 1955, *305 Lyons on March 25, 1955, and Whitesell on October 26, 1955. Two of them complained of a headache and one of an injured shoulder, where he had been shot. Each of them said defendant questioned them closely as to where they lived and what they did for a living. Defendant first massaged their necks and shoulders while they were sitting on a chair. He then placed them on a padded table, massaged their neck, back, legs and arms, and on one or more occasions he suddenly jolted or made sudden thrusts of the vertebrae. He turned their heads from side to side and snapped or popped their necks. One of the witnesses, Whitesell, said he had persuaded defendant to give him the massage. This witness also said that when he went to defendant’s home, he asked for Dr. Craft, and defendant said ‘That’s me’. All of them testified that they saw no diplomas, signs or other indications that defendant was claiming to be a chiropractor or engaged in any particular kind of work. All admitted that he made no examination, prescribed no drugs, made no claim of being able to cure or relieve. The defendant, called on cross examination, admitted that he had no doctor’s degree of any sort, although his name was listed in the telephone book as ‘Dr. L. L. Craft’. In explanation of this, he said that the Telephone company had asked him his business and he had told them he was a masseur. He had made no effort to have the ‘Dr.’ eliminated from the listing.
“Defendant called four witnesses, namely, Reverend A. H. Nanny, Harold Stephens, Fisher Franklin and Henry Ford.
“Each of these witnesses had been going to defendant for a long time, one saying he probably had been as many as 200 times. Each testified that defendant did nothing but massage; that they had been ‘adjusted’ or treated by chiropractor’s treatment, and that the chiropractic treatment was very different from what defendant did. They said he never ‘popped’ or ‘cracked’ their necks or spines or applied sudden force or thrusts. He never prescribed for them and they saw no diplomas, signs, or other indications from which it might be deduced defendant was claiming to be a chiropractor or doing such work. Ford said that on one occasion, he had told defendant his back hurt and defendant had suggested that he go see a doctor. Some of these witnesses likened the massages given by defendant to the body, to those given by the barber to the 'face, but said the barber was rougher. The same said he had taken the massages at Hot Wells (the Spa in Rapides Parish) and that defendant gave about the same thing, except at the Hot Wells, the massages were concluded with a ‘rub down’ with alcohol.
“The only advice or prescription, that any witness said that defendant had given them was (1) to a plaintiff witness, take exercise (the same advice that had been given him by an orthopedic surgeon), (2) stay out of a draft, also given to a plaintiff witness, (3) wear his hat, also' to a plaintiff witness and (4) to go see a doctor, given to a defendant witness. These were advices, it seems to the Court, about the same that the average man receives almost daily from his wife or other friends, and hardly can be said to be such as will be held to violate the Medical Practice Act.
“Applying the statutory law and the jurisprudence, as hereinabove reviewed, to the facts of this case, the Court cannot say that defendant was either (1) holding out himself to the public as being engaged in the business of diagnosing, treating, etc., patients, or (2) that he was or did practice chiropractic as that term has been delinea in the jurisprudence, particularly the Cronk case.
“Having the views expressed, the injunc-tive relief plaintiff seeks must be denied, ana accordingly,
“It is ordered, adjudged and decreed that defendant do have and recover judgment against the plaintiff, recalling the rule nisi herein issued and rejecting plaintiff’s demands, the plaintiff to pay such of the costs as are, under the law, taxable against it.”
*306 The plaintiff in his brief takes exception to the hereinabove quoted reasons for judgment of the learned trial judge on the following grounds:
“In his decision, the Trial Judge refused or neglected to apply the law as stated by the Supreme Court of Louisiana in the Cronk case, supra, and the Fife case, supra. In his interpretation and with an utter disregard for the holding of the Supreme Court, he said that under-the Act the defendant must:
1. Hold himself out to the public as being engaged in the business of diagnosing, treating, etc., patients; or,
2. That he was or did practice chiropractic as that term has been defined in the jurisprudence, particularly in the Cronk case.
“We strongly maintain that the Trial Judge committed manifest error in saying that the defendant-appellee must be a known and licensed chiropractor and that he must hold himself out to the public as being engaged in the practice of medicine.
“The Cronk case said, ‘As, under Section 13 of the Medical Act, the mere direction or application of physical force for the treating, curing or relieving * * *'. (Italics ours.) And in the Fife case, supra, in a well rendered opinion, Judge Overton said: ‘But the practice of medicine has a broader signification than that. It may consist in the application of physical force to parts of the body for the purpose of curing disease or relieving bodily ailments, and the Legislature has, in part, so defined it. Section 9 of Act 54 of 1918 quoted supra. * * * ’. (Italics ours.)
“These cases are the law of this State as has been decided by the Supreme Court and have been followed. These cases are binding on the Trial Court and also upon this Honorable Court and they have been utterly disregarded by the Trial Judge in this instance.
“The Trial Judge also erred in stating that in these cases that they applied to Act of 1914, however, in both instances the Act of 1918 was considered and was referred to in their opinions. It cannot be by any stress of the imagination be shown or concluded that these cases were decided under the 1914 Act rather than under the 1918 Act.
“The 1918 Act has been re-enacted into our [LSA] Revised Statutes as Title 37, Section 1261 and the Cronk case, and the Fife case, supra, are controlling.
“The defendant-appellee will probably rely on the cases of Louisiana State Board of Medical Examiners v. Beaird [La.App.], 83 So.2d 481, and Louisiana State Board of Medical Examiners v. Martindale [La. App.], 83 So.2d 544, where the defendant charged was either a masseur or used an electric vibrator. These cases are easily distinguishable from the case at bar, although the Trial Judge tried to interpret the facts to come within the meaning of the Beaird and Martindale cases.
“There is nothing in the Beaird and Mar-tindale cases to indicate that any physical force was applied to the body, however, there is a vast amount of evidence in our case indicating that physical force was applied to the body.”
We are unable to agree with the contention of counsel for plaintiff that the trial judge did not correctly interpret the Cronk and Fife cases, supra. The trial judge was also correct in stating that the Cronk case dealt specifically with the 1914 Act which was materially altered by the 1918 Act, now incorporated in our LSA-R.S. of 1950, Title 37, Section 1261. The Fife case was considered in the light of Section 9 of Act 54 of 1918 but, as stated by the trial judge, Fife admittedly was practicing chiropractic, holding himself out to the public as being engaged in the business and in the diagnosing, treating, curing in the manner and method common to members of that profession. In other words, in the Cronk case, the defendant was doing exactly what the law *307 said should constitute the practice of medicine and from which he was prohibited, while in the Fife case the defendants were doing exactly what the 1918 Act defined as the practice of medicine and which under the law they were prohibited from doing.
Counsel for plaintiff attempts to distinguish the case of Louisiana State Board of Medical Examiners v. Beaird, La.App., 83 So.2d 481, and Louisiana State Board of Medical Examiners v. Martindale, La.App., 83 So.2d 544, on the ground that in these cases there was nothing to indicate that any physical force was applied to the body. Physical force was applied to the body in both cases. A masseur applies physical force to the body, but in these cases the defendants were not practicing medicine as defined under the terms of Title 37, Section 1261, LSA-R.S., nor were they engaged in the practice of chiropractic.
It would appear that plaintiff contends that the mere application of force to the body constitutes the practice of medicine. If force alone were the test the mere touching of a body would be the application of force. The force applied must be done by one who is holding himself out to the public as being engaged in the business of diagnosing, treating, curing, or relieving any bodily or mental disease, condition, infirmity, deformity, defect, ailment of injury, etc.
Much is made of the fact that defendant was listed in the phone book with the appellation “Dr.” in front of his name. This is the only evidence intended to show that the defendant was holding himself out as a doctor, tie explained this by stating that the phone company listed him in this manner after he had told them he was a masseur. As found by the trial judge there is no advertisement or no claim that he could cure or diagnose anybody’s ailments or ills. He in nowise advertised as practicing chiropractic and above all there is not one single witness that testified in this case that went to him because he held himself out as being engaged in the business of diagnosing, curing, etc. The plaintiff’s witnesses were all employed as detectives to secure evidence, and the defendant’s witnesses went to him for massages.
The finding of fact by the District Court is not manifestly erroneous and for the reasons given by the learned Judge of the District Court and the additional reasons of this court, the judgment of the Lower Court is hereby affirmed.